**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
----------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
HOMER CITY                              :        Case No. 17-[_____] (___)
GENERATION, L.P.                        :
                                        :
            Debtor.¹                    :
----------------------------------------------------x
```

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING
DEBTOR TO CONTINUE ITS INSURANCE PROGRAMS AND SURETY BOND PROGRAM
AND TO PAY ALL OBLIGATIONS WITH RESPECT THERETO
PURSUANT TO SECTIONS 105(a), 363(b), 364(c), 364(d), AND 503(b) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004**

Homer City Generation, L.P., the debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**"), hereby files this motion (the "**Motion**"):

### Background

1.     On the date hereof (the "**Commencement Date**"), the Debtor commenced

with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**").  The Debtor continues to operate its business and manage its properties as

debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee,

examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

2.     Before the Commencement Date, the Debtor began the solicitation of

votes on the *Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.*

(the "**Plan**"), through the *Disclosure Statement for Prepackaged Chapter 11 Plan of*

*Reorganization of Homer City Generation, L.P.* (the "**Disclosure Statement**") pursuant to

sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtor expects that the Plan will be

---

¹ The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's
principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

accepted by the class entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

3.      Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration of John R. Boken in Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "**Boken Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

### Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

6.      By this Motion, pursuant to sections 105(a), 363(b), 364(c), 364(d) and 503(b) of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Boken Declaration and the Plan, as applicable.

Procedure (the "**Bankruptcy Rules**"), the Debtor requests: (i) authority to continue and to perform with respect to its Insurance Programs and Surety Bond Program (as such terms are defined below), and to post new or replacement collateral securing its surety bonds, if necessary, (ii) authority to pay any prepetition obligations under the Insurance Program,[3] and (iii) that the Court grant certain related relief.

7.  The Debtor will not seek relief with respect to the Surety Bond Program at the interim hearing on this Motion, but will instead seek such relief at the final hearing, if any. Accordingly, a proposed form of order granting the relief requested herein on an interim basis, solely with respect to the Debtor's Insurance Programs, is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**").  Pending a final hearing, a proposed form of order granting the relief requested herein on a final basis with respect to both the Debtor's Insurance Programs and Surety Bond Program is annexed hereto as **Exhibit B** (the "**Proposed Final Order**").

## The Debtor's Insurance Programs

8.  In the ordinary course of its business, the Debtor participates in various insurance programs (each, an "**Insurance Program**") in accordance with their respective insurance policies (each, an "**Insurance Policy**") through several insurance carriers (each, an "**Insurance Carrier**"), including:  (i) property and business interruption insurance (the "**Property and Business Interruption Program**"); (ii) commercial general liability insurance (the "**Commercial General Liability Program**"); (iii) commercial automobile insurance (the "**Automobile Liability Program**"); (iv) commercial umbrella liability insurance (the "**Commercial Umbrella Liability Program**"); (v) excess third party liability insurance (the

---

[3] To the best of the Debtor's knowledge, it does not owe any prepetition amounts on account of any Insurance Program or Surety Bond Program.  However, out of an abundance of caution, the Debtor requests authority to pay up to $50,000 of prepetition claims in the Proposed Interim Order and requests authority to pay any additional prepetition claims in the Proposed Final Order.

"**Excess Third Party Liability Program**"); (vi) excess liability insurance - SL (the "**Excess Liability SL Insurance Program**"); and (vii) pollution insurance (the "**Pollution Insurance Program**").  A list of the Insurance Programs is attached hereto as **Exhibit C**.

### A.    The Property and Business Interruption Program

9.    The Property and Business Interruption Program is an all-risk property insurance program that includes coverage for machinery breakdown, terrorist acts, business interruption, and various other events.  This is a subscription policy, with fourteen (14) subscribing insurance companies.[4]  The coverage period under the Property and Business Interruption Program is November 1, 2016 to November 1, 2017.  The annual premium under the Property and Business Interruption Program is $2,831,784.

### B.    The Commercial General Liability Program

10.    The Insurance Carrier for the Commercial General Liability Program is Arch Insurance Company.  The named insured is Homer City Generation, L.P.  The Commercial General Liability Program covers general commercial liability, including bodily injury and property damage liability, personal and advertising injury liability, and medical payments.  The coverage period under the Commercial General Liability Program is December 14, 2016 to December 14, 2017.  The annual premium under the Commercial General Liability Program is $139,926.

---

[4]  The subscribers to this policy are: Lloyds XLC (Policy #B0509BOWUI1600362); Lloyds (Ascot) (Policy #B0509BOWUI1600338); Lloyds (Travelers) (Policy #B0509BOWUI1600361); Navigators Management Co., Inc. on behalf of Lloyd's Syndicates: 1221 Navigators (85%), 1897 SKULD (10%), 4000 Pembroke (5%) (Policy #16NMNY1510-01); American International Group (Policy #34575323); XL Catlin (Policy #US00062053PR16A); Swiss Reinsurance Company Ltd. (Policy #UTP0453776-02); Zurich Insurance Group (Policy #PWG5471792-03); SCOR Reinsurance Co (Policy #10F151267-2016-1); Aspen Insurance Group (Policy #PWAET2Y16); Chubb Limited (Policy #37115479); Munich Reinsurance America, Inc. (Policy #B0509BOWUI1600468); AEGIS Insurance Services, Inc. (Policy #PO5287203P); and Ironshore Inc. (Policy #443167016A).

C.    **The Automobile Liability Program**

11.    The Automobile Liability Program covers liabilities relating to the Debtor's automobile assets as required by state law.  The Insurance Carrier under the Automobile Liability Program is Arch Insurance Company.  The named insured is Homer City Generation, L.P.  The coverage period under the Automobile Liability Program is December 14, 2016 to December 14, 2017.  The annual premium under the Automotive Liability Program is $37,115.

D.    **The Commercial Umbrella Liability Program**

12.    The Commercial Umbrella Liability Program provides excess coverage of: (i) general liability; (ii) automobile liability; and (iii) employer's liability.  The Insurance Carrier for the Commercial Umbrella Liability Program is ACE Property and Casualty Insurance Company.  The coverage period under the Commercial Umbrella Liability Program is December 14, 2016 to December 14, 2017.  The annual premium under the Commercial Umbrella Liability Program is $121,145.

E.    **The Excess Third Party Liability Program**

13.    The Excess Third Party Liability Program provides excess coverage for the Commercial Umbrella Liability Program.  The Insurance Carrier for the Excess Third Party Liability Program is Arch Insurance Company.  The coverage period under the Excess Third Party Liability Program is December 14, 2016 to December 14, 2017.  The annual premium under the Excess Third Party Liability Program is $58,350.

F.    **The Excess Liability SL Insurance Program**

14.    The Excess Liability SL Insurance Program provides excess coverage for the Excess Third Party Liability Program. The Insurance Carrier for the Excess Liability SL

Insurance Program is the Chubb Group of Insurance Companies (Federal Insurance Company). The coverage period under the Excess Liability SL Insurance Program is December 14, 2016 to December 14, 2017. The annual premium under the Excess Liability SL Insurance Program is $41,200.

### G.    The Pollution Insurance Program

15.    The Pollution Insurance Program provides insurance coverage for offsite pollution liability, onsite first party pollution, onsite pollution liability, emergency expenses, investigation/defense/settlement costs, and supplementary payments. The Insurance Carrier for the Pollution Insurance Program is the Chubb Group of Insurance Companies (Vigilant Insurance Company). The coverage period under the Pollution Insurance Program is August 17, 2015 to August 17, 2018. The premium under the Pollution Insurance Program is $133,634 every three years. There is an additional annual premium of $1,502 for coverage relating to the Debtor's underground storage tanks.

### H.    The Debtor's Insurance Broker

16.    The Debtor uses Willis of New York, Inc. ("**Willis**") as its insurance broker for the Insurance Programs. As broker, Willis reviews policies and advises the Debtor with respect to the procurement and maintenance of its Insurance Programs. Willis is paid via commissions, which are included in the premiums paid to insurers. The Debtor believes that, as of the Commencement Date, all brokers' fees have been fully paid.

### The Debtor's Surety Bond Program

17.    In the ordinary course of business, the Debtor is required to provide surety bonds to the Pennsylvania Department of Environmental Protection (the "**PDEP**") to secure the Debtor's obligations under various environmental laws and regulations (the "**Surety Bond**

**Program**").  These obligations relate to compliance with, among other things, clean stream and air pollution laws, coal refuse disposal and waste management removal requirements, and other environmental obligations.  A list of the sureties (the "**Sureties**") and surety bonds in the Surety Bond Program is attached hereto as **Exhibit D**.[5]

18.     As of the Commencement Date, the Debtor has approximately $42.2 million in outstanding surety bonds.  The premiums for the surety bonds are paid by General Electric Company (an indirect parent of the Debtor) ("**GE**") as part of a larger surety bond program for its subsidiaries and affiliates.  Accordingly, the Debtor believes that as of the Commencement Date it does not owe any amounts for unpaid surety bond premiums.

19.     Because the issuance of a surety bond shifts the risk of a debtor's nonperformance of environmental obligations to the surety, sureties cautiously screen bond applicants to minimize their loss exposure.  Despite this allocation of risk, a surety bond is not the equivalent of an insurance policy.  Unlike an insurance policy, if a Surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal, in this case, Homer City Generation, L.P.

20.     To support the Debtor, GE is a party to indemnity agreements with the Sureties (the "**Surety Indemnity Agreements**").[6]  Pursuant to the Surety Indemnity Agreements, GE agrees to pay premiums, including renewal premiums and endorsements, and to indemnify and hold the Sureties harmless from costs and damages in connection with the surety

---

[5]   Although the list of surety bonds set forth on **Exhibit D** hereto is substantially complete, the relief requested herein is to be applicable with respect to all surety bonds in the Surety Bond Program and is not limited to those surety bonds listed on **Exhibit D**.

[6]   Pursuant to the Plan, on the Effective Date, any collateral or guarantee provided by GE to any Surety for the benefit of the Debtor shall be replaced by Exit Letters of Credit issued under the Exit Facility Credit Agreement.

bonds.  A description of the Surety Indemnity Agreements is included in **Exhibit D** attached

hereto.

**The Court Should Authorize the Debtor to Continue its**
**Insurance Programs and the Surety Bond Program**

A.      **Payments Made With Respect to the Insurance Programs and the**
        **Surety Bond Program are Ordinary Course Transactions, and Are**
        **Also Warranted Under Sections 105(a), 363(b), and 503(b) of the**
        **Bankruptcy Code**

21.      The Debtor believes that participation in the Insurance Programs and the

Surety Bond Program, and the payment of its obligations with respect thereto, constitute an

ordinary-course business practice of the Debtor.  Section 363(c)(1) of the Bankruptcy Code

authorizes a debtor in possession to enter into transactions and use property of the estate in the

ordinary course of business without notice or a hearing.  *See* 11 U.S.C. § 363(c)(1).  The

maintenance of the Insurance Programs and the Surety Bond Program and the honoring of the

obligations arising thereunder, including the payment of any prepetition amounts owing with

respect thereto,[7] are each the type of ordinary course transaction contemplated by the foregoing

provision.

22.       To the extent that the Court believes that any such actions are not

properly characterized as transactions in the ordinary course of the Debtor's business, the Debtor

respectfully requests that the Court authorize the Debtor to take such actions pursuant to sections

105(a), 363(b), and 503(b) of the Bankruptcy Code.

23.      Pursuant to section 363(b)(1) of the Bankruptcy Code, "[t]he trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

---

[7] As noted above, to the best of the Debtor's knowledge, it does not owe any prepetition amounts on account of any
Insurance Program or the Surety Bond Program.  Nonetheless, out of an abundance of caution, the Debtor requests
authority to pay prepetition amounts owing with respect thereto up to a limit of $50,000.

property of the estate."  To approve the use of a debtor's assets outside the ordinary course of

business, a court must find the debtor articulated some business justification for such use.  *See,*

*e.g.*, *Computer Sales Int'l v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.)*, 293 B.R.

124, 126 (D. Del. 2003) ("As applied in the Third Circuit, a court should approve a debtor's use

of assets outside the ordinary course of business if the debtor can demonstrate a sound business

justification for the proposed transaction.") (citations omitted); *see also Dai-Ichi Kangyo Bank v.*

*Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153

(D. Del. 1999); *Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335

B.R. 22, 27-28 (S.D.N.Y. 2005) (a court must find that a "good business reason" exists for the

use of assets outside the ordinary course of business) (quoting *Comm. of Equity Sec. Holders v.*

*Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  If payment of a

prepetition claim is essential for the continued operations of the Debtor, then a sound business

justification exists to use estate assets outside of the ordinary course of business.  *See In re*

*Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may

authorize payment of prepetition claims under section 363(b) if such payment is essential to the

continued operation of the debtor).

      24.     Furthermore, section 105(a) of the Bankruptcy Code empowers the Court

to "issue any orders, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).  Pursuant to this doctrine of necessity, the

bankruptcy court may exercise its broad grant of equitable powers to permit the payment of

prepetition obligations when such payment is essential to the continued operation of the debtor's

business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that

section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition

claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

25.     Bankruptcy courts regularly rely on their authority under section 105(a) and the doctrine of necessity to grant debtors the discretionary authority to pay certain prepetition claims "where the payment is necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code."  *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Penn. 1993); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept").  The rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with the paramount goal of chapter 11: "the continued operation and rehabilitation of the debtor . . . ." *Ionosphere Clubs*, 98 B.R. at 176.  To that end, approval of such payments benefits, rather than harms, the Debtor's other creditors.  *See, e.g.*, *Sharon Steel*, 159 B.R. at 737 (approving payments of certain prepetition wages under the doctrine of necessity where doing so would maximize the value of the Debtor's assets and noting that payments made pursuant to the doctrine of necessity "must not only be in the best interest of the debtor but also in the best

interest of its other creditors").  Moreover, Bankruptcy Rule 6003 itself implies that the payment

of prepetition obligations may be permissible within the first twenty-one (21) days of a case

where doing so is "necessary to avoid immediate and irreparable harm."

        26.     In this chapter 11 case, the Debtor's use of estate funds to pay obligations

arising from the Insurance Programs (the "**Insurance Program Obligations**") and to post new

or replacement collateral to secure the performance of its obligations under the Surety Bond

Program (the "**Surety Bond Obligations**") is permitted under sections 105(a), 363(b), and

503(b) and of the Bankruptcy Code because such obligations are necessary costs of preserving

the Debtor's estate.  Without authority to maintain and pay amounts owing in connection with

the Insurance Programs, and to post new or replacement collateral to continue the Surety Bond

Program, the ability of the Debtor to conduct operations would come to a halt to the detriment

and prejudice of all parties in interest.  Failure to pay the Insurance Program Obligations and to

continue the Surety Bond Program could result in the cancellation of such programs, which

would expose the Debtor to significant liability and fines.  Such exposure could have a materially

adverse impact on the Debtor's ability to reorganize successfully.

        27.     Based on the foregoing, the Debtor respectfully submits that the

maintenance and continuation of the Insurance Programs and the Surety Bond Program,

including the payment of any prepetition obligations and the posting of new or replacement

collateral to secure its performance of environmental obligations with respect to the Surety

Bonds, as needed, represents a sound exercise of the Debtor's business judgment, and is justified

under sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code.  Accordingly, the

Debtor submits that the proposed relief with respect to the Insurance Obligations and Surety

Bonds is warranted in this chapter 11 case.

**B.     To the Extent the Court Determines that the Surety Bond Program Is a Secured Extension of Credit, Relief Is Appropriate Under Section 364 of the Bankruptcy Code**

28.     Section 364(c) permits a debtor unable to obtain unsecured credit allowable in the ordinary course under section 364(a) to obtain credit (1) with priority over any or all administrative expenses specified in sections 503(b) or 507(b); (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien.  To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  *Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (affirming the lower court's approval of a loan made to the debtor under sections 364(c) and (d)).  The Bankruptcy Code "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.*; *see also In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989) (finding that "it would be unrealistic and unnecessary" to require a debtor to conduct "an exhaustive search for financing" in cases where few lenders would be willing to extend credit).  Provided that an agreement to obtain secured credit is consistent with the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in exercising its sound business judgment in obtaining such credit.  *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, *inter alia*, an exercise of "sound and reasonable business judgment").

29.     The Debtor may need to post new or replacement collateral to replace the Surety Indemnity Agreements and to continue its existing Surety Bond Program.  However, the

Debtor believes that it would be exceedingly difficult to obtain new bonding capacity at this time except on a secured basis.  To the extent that the posting of new or replacement collateral securing its Surety Bonds is deemed a secured extension of credit, the Debtor requests authority to do so pursuant to section 364 of the Bankruptcy Code.

### Cause Exists to Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers Requested to Pay the Insurance Obligations

30.     The Debtor has sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  Also, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the obligations discussed herein.  Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtor has sufficient funds standing to its credit with such financial institution, and such financial institution may rely on the representations of the Debtor without any duty of further inquiry and without liability for following the Debtor's instructions.  The Debtor also seeks authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or transfer requests on account of Insurance Program Obligations or Surety Bond Obligations dishonored or rejected as a result of the commencement of the Debtor's chapter 11 case.

## The Debtor Has Satisfied Bankruptcy Rule 6003(b)

31.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  As described in the Boken Declaration, the Debtor is legally and contractually required to maintain many of its Insurance Programs and the Surety Bond Program.  In addition, the termination or nonrenewal of any of the Insurance Programs or the Surety Bond Program as a result of the Debtor's failure to pay any Insurance Program Obligations or Surety Bond Obligations could subject the Debtor to substantial liability as well as a possible cessation of operations, to the detriment of all parties in interest.  Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Request for Bankruptcy Rule 6004(a) and (h) Waivers

32.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the Boken Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day (14) stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Reservation of Rights

33.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any

appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

### Notice

34.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's thirty (30) largest unsecured creditors on a consolidated basis, (iii) counsel to the Consenting Noteholders, (a) O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: George Davis, Esq., Andrew Parlen, Esq., and Joseph Zujkowski, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Sean Beach, Esq.) (iv) counsel to the Collateral Agent, Emmet, Marvin & Martin, LLP (Attn: Thomas A. Pitta, Esq.), (v) counsel to GE (a) Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq. and Sunny Singh, Esq.) and (b) Reed Smith LLP,  1201 N. Market Street, Suite 1500, Wilmington, DE 19801 (Attn: Kurt Gwynne, Esq.), (vi) the Securities and Exchange Commission, (vii) the Internal Revenue Service, (viii) the United States Attorney's Office for the District of Delaware, (ix) the Debtor's banks and financial institutions, (x) any other party entitled to notice pursuant to Local Rule 9013-1(m), (xi) the Insurance Carriers and (xii) the Sureties (the "**Notice Parties**").

35.     The Debtor respectfully submits that no further notice is required.  No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE the Debtor respectfully requests entry of the Proposed Interim Order and the Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 11, 2017
       Wilmington, Delaware

/s/ Mark D. Collins
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Joseph C. Barsalona II (No. 6102)
Andrew M. Dean (No. 6147)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              silberglied@rlf.com
              heath@rlf.com
              barsalona@rlf.com
              dean@rlf.com

*Proposed Attorneys for the Debtor and*
*Debtor in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------x
                                          :

In re                                  :       **Chapter 11**
                                            :

**HOMER CITY**           :       **Case No. 17-[_____] (___)**
**GENERATION, L.P.**    :
                                            :

                      **Debtor.**[1]      :
-------------------------------------------------------x    **Re: Docket No. ___**

**INTERIM ORDER AUTHORIZING DEBTOR TO CONTINUE ITS INSURANCE
PROGRAMS AND SURETY BOND PROGRAM AND TO PAY ALL OBLIGATIONS
WITH RESPECT THERETO PURSUANT TO SECTIONS 105(a), 363(b),
364(c), 364(d), AND 503(b) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 6003 AND 6004**

Upon the motion, dated January 11, 2017 (the "**Motion**"),[2] of Homer City

Generation, L.P., the debtor and debtor in possession in the above-captioned chapter 11 case (the

"**Debtor**"), pursuant to sections 105(a), 363(b), 364(c), 364(d), and 503(b) of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for interim (this "**Interim Order**") and final

orders:  (i) authorizing the Debtor to continue and to perform with respect to its Insurance

Programs and Surety Bond Program, and to post new or replacement collateral securing its

Surety Bonds, if ncessary, (ii) authorizing the Debtor to pay any prepetition obligations under the

Insurance Program,  and (iii) granting certain related relief, all as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the

United States District Court for the District of Delaware, dated February 29, 2012; and

---

[1] The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

consideration of the Motion and the requested relief being a core proceeding pursuant to 28

U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided to the Notice Parties; and

such notice having been adequate and appropriate under the circumstances; and it appearing that

no other or further notice need be provided; and the Court having reviewed the Motion; and the

Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and

upon the Boken Declaration, filed contemporaneously with the Motion, and the record of the

Hearing and all of the proceedings had before the Court; and the Court having determined that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate

and irreparable harm to the Debtor and its estate as contemplated by Bankruptcy Rule 6003, and

is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and upon all

of the proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

2. The Debtor is authorized, but not directed, to continue its Insurance

Programs and to perform with respect thereto.

3. The Debtor is authorized to pay any prepetition amounts owed with

respect to the Insurance Programs up to a cap of $50,000 in the aggregate.

4. Any and all authorizations or payments authorized herein shall be subject

to and implemented in accordance with the provisions of the Cash Collateral Order (as defined in

the Boken Declaration), including any budget in connection therewith.

RLF1 16585720V.1

5.     In accordance with this Interim Order (or other order of the Court), each of the financial institutions at which the Debtor maintains its accounts relating to the payment of the obligations described in the Motion are authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtor with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Commencement Date, without any duty to inquire otherwise.

6.     The Debtor is authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition obligations and claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtor's chapter 11 case.

7.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.

8.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

9.     Notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule and 6004(a) are waived.

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

12.     The Debtor is authorized to take all steps necessary or appropriate to carry out this Interim Order.

13.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

RLF1 16585720V.1

14.    A final hearing to consider the relief requested in the Motion shall be held

on **_____, 2017 at _____** (**Eastern Time**) and any objections or responses to the

Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for

the Debtor, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street,

Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq., Russell C. Silberglied, Esq., and

Paul N. Heath, Esq.) and (ii) the Notice Parties, in each case, so as to be actually received on or

prior to _____, 2017 at 4:00 p.m. (Eastern Time).

Dated: _____, 2017
        Wilmington, Delaware

                                         _____
                                         UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------x
                                  :

In re                             :     **Chapter 11**
                                    :

**HOMER CITY**                 :     **Case No. 17-[_____] (___)**
**GENERATION, L.P.**         :
                                    :

               **Debtor.**[1]     :

-------------------------------------------------------x     **Re: Docket No. __**

**FINAL ORDER AUTHORIZING DEBTOR TO CONTINUE ITS INSURANCE**
**PROGRAMS AND SURETY BOND PROGRAM AND TO PAY ALL OBLIGATIONS**
**WITH RESPECT THERETO PURSUANT TO SECTIONS 105(a), 363(b),**
**364(c), 364(d), AND 503(b) OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULES 6003 AND 6004**

Upon the motion, dated January 11, 2017 (the "**Motion**"),[2] of Homer City

Generation, L.P., the debtor and debtor in possession in the above-captioned chapter 11 case (the

"**Debtor**"), pursuant to sections 105(a), 363(b), 364(c), 364(d), and 503(b) of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for interim and final (this "**Final Order**")

orders: (i) authorizing the Debtor to continue and to perform with respect to its Insurance

Programs and Surety Bond Program, and to post new or replacement collateral securing its

Surety Bonds, if necessary, (ii) authorizing the Debtor to pay any prepetition obligations under

the Insurance Program,  and (iii) granting certain related relief, all as set forth in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated February 29, 2012; and consideration of

---

[1] The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the Interim Order (as defined herein) having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Interim Hearing**"); and the Court having entered an order granting the relief requested in the Motion on an interim basis [Docket No. [_]] (the "**Interim Order**") and scheduling a final hearing on the Motion (the "**Final Hearing**"); and the Final Hearing having been held (if necessary) to consider the relief requested in the Motion on a final basis; and upon the Boken Declaration, filed contemporaneously with the Motion, the record of the Interim Hearing and the Final Hearing (if such was held) and all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtor is authorized, but not directed, to continue all Insurance Programs and the Surety Bond Program, and to perform with respect thereto.

3.      The Debtor is authorized to pay any prepetition amounts owed with respect to the Insurance Programs.

2

4.      The Debtor is authorized, in each case with the consent of the ad hoc group of holders constituting a majority in the aggregate principal amount of the outstanding 8.137% Senior Secured Notes due 2019 and 8.734% Senior Secured Notes due 2026, to post new or replacement collateral securing its obligations with respect to its Surety Bonds and to continue its Surety Bond Program.

5.      In accordance with this Final Order (or other order of the Court), each of the financial institutions at which the Debtor maintains its accounts relating to the payment of the obligations described in the Motion are authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtor with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Commencement Date, without any duty to inquire otherwise.

6.      The Debtor is authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition obligations and claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtor's chapter 11 case.

7.      Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any

RLF1 16585720V.1

claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.

8.      Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

9.      Any and all authorizations or payments authorized herein shall be subject to and implemented in accordance with the provisions of the Cash Collateral Order (as defined in the Boken Declaration), including any budget in connection therewith.

10.     Notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are waived.

11.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

12.     The Debtor is authorized to take all action necessary to the relief granted in this Final Order.

13.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated: _____, 2017
        Wilmington, Delaware

        _____
        UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT C</u>**

List of Insurance Programs

Insurance Programs

| Type of Coverage | Insurers | Policy Number(s) | Policy Term | Annual Premium/ Fees |
|---|---|---|---|---|
| | | | | |
| Property/Business Interruption | Various[1] | Various | November 1, 2016 to November 1, 2017 | $2,831,784 |
| Commercial General Liability | Arch Insurance Company | EPO005254303 | December 14, 2016 to December 14, 2017 | $139,926 |
| Commercial Automobile | Arch Insurance Company | CAB005254403 | December 14, 2016 to December 14, 2017 | $37,115 |
| Commercial Umbrella Liability | ACE Property and Casualty Insurance Company | M00981357 001 | December 14, 2016 to December 14, 2017 | $121,145 |
| Excess Third Party Liability | Arch Insurance Company | UXP0052528-00 | December 14, 2016 to December 14, 2017 | $58,350 |
| Excess Liability Insurance - SL | Chubb Group of Insurance Companies | 7913-43-17 | December 14, 2016 to December 14, 2017 | $41,200 |
| Pollution Legal | Chubb Group of Insurance Companies | 3731-46-04 DTO | August 17, 2015 to August 17, 2018 | $133,634* $1,502 (underground tanks) |

*Premium for three years

---

[1] This is a subscription policy.   The subscribers to this policy are: Lloyds XLC (Policy #B0509BOWUI1600362); Lloyds (Ascot) (Policy #B0509BOWUI1600338); Lloyds (Travelers) (Policy #B0509BOWUI1600361); Navigators Management Co., Inc. on behalf of Lloyd's Syndicates: 1221 Navigators (85%), 1897 SKULD (10%), 4000 Pembroke (5%) (Policy #16NMNY1510-01); American International Group (Policy #34575323); XL Catlin (Policy #US00062053PR16A); Swiss Reinsurance Company Ltd. (Policy #UTP0453776-02); Zurich Insurance Group (Policy #PWG5471792-03); SCOR Reinsurance Co (Policy #10F151267-2016-1); Aspen Insurance Group (Policy #PWAET2Y16); Chubb Limited (Policy #37115479); Munich Reinsurance America, Inc. (Policy #B0509BOWUI1600468); AEGIS Insurance Services, Inc. (Policy #PO5287203P); and Ironshore Inc. (Policy #443167016A).

# **EXHIBIT D**

List of Surety Bond Programs and Indemnity Agreements

Surety Bond Programs and Indemnity Agreements

| Description (date) | Principal | Surety/Indemnitor | Amount |
|---|---|---|---|
| Surety: Homer City Ash Disposal (11.6.13) | Homer City Generation L.P. | Fidelity and Deposit Company Maryland | $16,084,279.00 |
| Surety: Homer City Ash Disposal (11.19.12) | Homer City Generation L.P. | Fidelity and Deposit Company Maryland | $13,678,080.00 |
| Surety: Mining Coal Refuse (11.19.12) | Homer City Generation L.P. | Fidelity and Deposit Company Maryland | $8,885,115.00 |
| Surety: Two Lick Creek Dam (12.31.15) | Homer City Generation, L.P. | Continental Casualty Company | $3,600,000.00 |
| Indemnity (12.23.13) | Fidelity and Deposit Company Maryland and others | General Electric Company | N/A |
| Indemnity (12.23.13) | Continental Casualty Company and others | General Electric Company | N/A |

RLF1 16585720V.1