## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
--------------------------------------------------x
                                     :
In re                                :      Chapter 11
                                     :
HOMER CITY                           :      Case No. 17-[_____] (___)
GENERATION, L.P.                     :
                                     :
              Debtor.[1]             :
--------------------------------------------------x
```

## DEBTOR'S MOTION TO (A) SCHEDULE A COMBINED HEARING ON (I) ADEQUACY OF DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES AND (II) CONFIRMATION OF PLAN; (B) ESTABLISH PROCEDURES FOR OBJECTING TO DISCLOSURE STATEMENT, SOLICITATION PROCEDURES, AND PLAN; (C) APPROVE FORM, MANNER, AND SUFFICIENCY OF NOTICE OF COMBINED HEARING AND COMMENCEMENT OF CHAPTER 11 CASE; (D) EXTEND TIME, AND UPON PLAN CONFIRMATION, WAIVE THE REQUIREMENTS TO (I) CONVENE SECTION 341 MEETING AND (II) FILE STATEMENT OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; AND (E) GRANT RELATED RELIEF

Homer City Generation, L.P., the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby files this motion (the "**Motion**"):

### Background

1.     On the date hereof (the "**Commencement Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

---

[1] The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

2.      On January 9, 2017, the Debtor, a group of holders of approximately seventy percent (70%) of the Debtor's secured notes (the "**Consenting Noteholders**"), and certain affiliates of General Electric Company (collectively, the "**RSA Parties**") entered into a Restructuring Support Agreement (the "**RSA**") with respect to the *Prepacked Chapter 11 Plan of Reorganization of Homer City Generation, L.P.* (the "**Plan**").

3.      On January 9, 2017, the Debtor began the solicitation of votes on the Plan through the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.* (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtor expects that the Plan will be accepted by the Class entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

4.      Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration of John R. Boken in Support of the Debtor's Chapter 11 Petition and First Day Relief*, sworn to on the date hereof (the "**Boken Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## Jurisdiction

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Boken Declaration and the Plan, as applicable.

**Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Relief Requested**

7.      By this Motion, pursuant to sections 105, 341, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, Rules 1007, 2002, 3017, 3018, 3020, 9006, and 9018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Local Rules 1007-1, 3017-1, 3018-1, 3018-2, and 9006-1, the Debtor requests entry of an order:

(a)      scheduling a combined hearing (the "**Combined Hearing**") to consider:

(i)      adequacy of the Disclosure Statement for the Plan;

(ii)      adequacy of the solicitation procedures utilized in connection with the solicitation of votes to accept or reject the Plan (collectively, the "**Solicitation Procedures**"); and

(iii)      confirmation of the Plan;

(b)      establishing procedures for objecting to the Disclosure Statement, Solicitation Procedures, and the Plan;

(c)      approving the form, manner, and sufficiency of notice of (i) the Combined Hearing and (ii) commencement of this chapter 11 case;

(d)      extending the time for:  (i) the Debtor to convene the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341 Meeting**") through and including March 12, 2017 (the "**Deadline**")[3] and waiving the requirement that the Debtor convene a Section 341 Meeting if the Plan is confirmed by the Deadline; and (ii) the Debtor to file its schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules and SOFAs**") through and including the Deadline and waiving the requirement that the Debtor file the Schedules and SOFAs if the Plan is confirmed by the Deadline; and

(e)      granting related relief.

---

[3] This date is sixty (60) days from the Commencement Date.

8.      A Proposed Order (the "**Scheduling Order**") approving the relief requested in

this Motion is annexed hereto as **Exhibit A**.

9.      The following table provides certain dates and proposed dates related to specific

relief requested in the Motion (subject to the Bankruptcy Court's calendar):

| | |
|---|---|
| **Voting Record Date** | January 5, 2017 |
| **Distribution of Solicitation Packages** | January 9, 2017 |
| **Commencement Date** | January 11, 2017 |
| **Distribution of Combined Notice** | January 11, 2017 |
| **Plan Supplement Deadline** | January 30, 2017 |
| **Voting Deadline** | February 6, 2017 |
| **Objection Deadline** | February 8, 2017 |
| **Confirmation Hearing** | Week of February 15, 2017 |

## The Plan

10.      The Plan classifies Claims against, and Interests in, the Debtor, and provides for

the treatment of each class as follows:[4]

| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan | Approx. Percentage Recovery[5] |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | In full satisfaction of its Claim, cash equal to the full amount of its Claim or other such treatment rendering such claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. | Unimpaired | No (Presumed to Accept) | 100% |
| 2 | Other Secured Claims | In full satisfaction of its Claim: (a) payment in full in cash; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) reinstatement of such Claim; or (d) other treatment rendering such Claim | Unimpaired | No (Presumed to Accept) | 100% |

---

[4]  This summary is for ease of reference only and shall not limit, modify, or amend the proposed treatment set forth in the Plan, which, in the event of any inconsistency, shall govern.

[5] The ranges set forth under Approximate Percentage Recovery are based on the range of reorganized equity value of the Debtor as described in the Valuation Analysis.

| | | | | | |
|---|---|---|---|---|---|
| | | Unimpaired pursuant to section 1124 of the Bankruptcy Code. | | | |
| 3 | Notes Claims | Except to the extent that a holder of an Allowed Notes Claim agrees to a less favorable treatment of such Claim, (i) each such holder (other than GE) shall receive, in exchange for the contribution of such Notes Claim to New Holdco, such holder's Pro Rata share of one hundred percent (100%) of the NewCo Interests, plus such holder's Pro Rata share of the GE Remainder and (ii) GE, on account of the GE Notes Claims, shall receive in exchange for the contribution of the GE Notes Claims to New Holdco, 66.67% of its Pro Rata share of the NewCo Interests and no share of the GE Remainder. | Impaired | Yes | Notes Claims<br><br>36.7% - 46.5%<br><br>GE Notes Claims<br>23.0% - 29.2% |
| 4 | General Unsecured Claims | In full satisfaction of its Claim, each holder of an Undisputed General Unsecured Claim who was not paid pursuant to the All Trade Order shall receive (i) payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after such General Unsecured Claim becomes Allowed, in each case, or as soon as reasonably practicable thereafter, or (ii) such other treatment so as to render such holder's General Unsecured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. | Unimpaired | No (Presumed to Accept) | 100% |
| 5 | Intercompany Claims | Each Holder of an Intercompany Claim,[6] if any, shall not receive any consideration or recovery under the Plan on account of its Intercompany Claim, and on the Effective Date, all Intercompany Claims shall be cancelled and discharged. | Impaired | No (Deemed to Reject) | 0% |
| 6 | Homer City Interests | On the Effective Date, all Homer City Interests shall be cancelled, extinguished, and discharged. | Impaired | No (Deemed to Reject) | 0% |

---

[6] For the avoidance of doubt, this term does not include Notes Claims held by GE or the GE Ordinary Course Claims.

**Prepetition Solicitation**

11.    The Disclosure Statement describes the Debtor's proposed reorganization and its effects on holders of Claims and Interests.  Following the execution of the RSA, on January 9, 2017, the Debtor, through its voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**" or "**Epiq**"), caused copies of the following materials (the "**Solicitation Packages**") to be transmitted to holders of Claims in Class 3 (Notes Claims):

    (a)    the Disclosure Statement;

    (b)    the Plan;

    (c)    the exhibits to the Disclosure Statement, which include the Plan, the Liquidation Analysis, the Transition Services Agreement; and

    (d)    the forms of ballots (the "**Ballots**") with voting instructions.[7]

12.    The Ballots provide that in order to be counted, each Ballot must be properly executed, completed, and delivered to the Voting Agent so that it, or the Master Ballot (as defined below) transmitting such vote, is received by no later than 5:00 p.m. (Eastern Time) on February 6, 2017 (the "**Voting Deadline**"), unless such time is extended by the Debtor.

13.    Class 3 (Notes Claims) is the only class that is entitled to vote on the Plan. Pursuant to the terms of the RSA, the Consenting Noteholders agreed to vote in favor of, and otherwise support, the Plan, provided that certain conditions and milestones are satisfied.

14.    Holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 4 (General Unsecured Claims) are unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan and were not solicited.  The Debtor did not solicit votes from the holders in Class 5 (Intercompany Claims) and Class 6 (Homer City Interests) as such classes will receive no recovery under the Plan and

---

[7] The forms of Ballots are annexed hereto as Exhibits B.

are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  As described below, all holders of Claims and Interests, including those who were not solicited, will receive a copy of the Combined Notice (as defined herein).

**The Relief Requested Should be Granted**

A.    **Scheduling Combined Hearing on Disclosure Statement, Solicitation Procedures, and Plan**

15.    Section 105(d)(2)(B)(vi) of the Bankruptcy Code authorizes the Bankruptcy Court to combine a hearing on a disclosure statement with a hearing on the confirmation of a plan of reorganization. 11 U.S.C. § 105(d)(2)(B)(vi).

16.    A Combined Hearing in this chapter 11 case will promote judicial economy and allow the Debtor to restructure expeditiously and preserve value.  The adverse effects of the chapter 11 filing on the Debtor's business will be minimized through the prompt transition of the business to the Noteholders.  This will minimize costs, increasing distributions to holders of claims against the Debtor and reducing the administrative expenses of the estate.  Such benefits are the hallmarks of a prepackaged plan of reorganization.  Therefore, the Debtor requests entry of the Scheduling Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting a date for the Combined Hearing for the Court to consider the (a) adequacy and approval of the Disclosure Statement, (b) adequacy and approval of the Solicitation Procedures, and (c) confirmation of the Plan.

17.    Bankruptcy Rules 2002(b) and 3017(a) require twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections and the hearing to approve a disclosure statement, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).  Local Rule 3017-1(a) requires that the hearing date on a disclosure statement be at least thirty-five (35) days following service thereof.  Section 1128(a) of the Bankruptcy

Code provides that, "[a]fter notice, the court shall hold a hearing on confirmation of a Plan." 11 U.S.C. § 1128(a).

18.    The Debtor seeks to consummate the Plan expeditiously and efficiently.  In order to meet the milestones set forth in the RSA, the Disclosure Statement must be approved, and the Plan confirmed, no later than sixty days after the Commencement Date.  Accordingly, the Debtor requests that the Combined Hearing be held, subject to the Bankruptcy Court's schedule, on or about February 15, 2017, in compliance with Bankruptcy Rules 2002(b) and 3017(a), and Local Rule 3017-1.

19.    It is in the best interests of the Debtor, its estate, creditors, and parties in interest to hold the Combined Hearing as soon as practicable.  The proposed schedule affords all parties in interest sufficient notice of the Combined Hearing.  Specifically, the proposed schedule affords parties thirty-five (35) days after notice of the Confirmation Hearing to evaluate their rights in respect of the Plan.  All other classes besides Class 3 (Notes Claims) are either Unimpaired or deemed to reject the Plan, so 35 days is more than ample time.  With respect to Class 3 (Notes Claims), approximately 86% of those claims signed the RSA (approximately 70% held by the Consenting Noteholders and 16% held by affiliates of GE), and are obligated, in accordance with its terms, to vote in favor of the Plan.  The Debtor believes there are only approximately one hundred (100) or so other holders in this class.  Moreover, those holders received a copy of the Disclosure Statement (including the Plan as an exhibit) prior to the Commencement Date.  Thus all voting parties have been provided a copy of the Plan and the Disclosure Statement with sufficient time to evaluate such documents prior to the proposed Combined Hearing or the deadline for objecting to the Plan (described more fully below). Therefore, no party in interest will be prejudiced by the relief requested herein.

**B.**     **Deadline and Procedures for Objections to Adequacy of the Disclosure Statement and Solicitation Procedures, and/or Confirmation of the Plan**

20.     Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation."  Fed. R. Bankr. P. 3017(c).  Moreover, Bankruptcy Rule 2002(b) requires that all creditors be given at least twenty-eight (28) days' notice of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to the discretion of the Bankruptcy Court to reduce such time period under Bankruptcy Rule 9006(c)(1).  Fed. R. Bankr. P. 2002(b).

21.     The Debtor requests at least two (2) business days following entry of the Scheduling Order for the service of notice of the Combined Hearing (although the Debtor intends to serve the notice on the same day the order is entered).  As set forth above, the Debtor proposes that the Combined Hearing be set, subject to the Court's schedule, on February 15, 2017.

22.     The Debtor requests that the Court set February 8, 2017 at 4:00 p.m. (Eastern Time) (the "**Objection Deadline**") as the deadline to file objections to the adequacy and approval of the Disclosure Statement and Solicitation Procedures, and confirmation of the Plan (collectively, the "**Objections**").  The Debtor further proposes that the Court direct that any Objections must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Rules; and (e) be filed with the Bankruptcy Court, together with proof of service.  In addition to being filed with the Bankruptcy Court, any such responses or objections must be served on the following parties so as to be received by **no later than the Objection Deadline:**

      i.     the Debtor:
              Homer City Generation, L.P.
              1750 Power Plant Road
              Homer City, Pennsylvania, 15748

Attn:     Matthew L. Weidner, Esq.
Email:    matthew.weidner@ge.com

ii.      Proposed counsel to the Debtor:
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
Attn:     Mark D. Collins, Esq.
           Russell C. Silberglied, Esq.
           Paul N. Heath, Esq.
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:    Collins@rlf.com
           Silberglied@rlf.com
           Heath@rlf.com

iii.     Counsel to GE:
Weil, Gotshal & Manges LLP (as counsel to GE)
767 Fifth Avenue
New York, NY 10153
Attn:     Robert J. Lemons, Esq.
           Sunny Singh, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail:    Robert.Lemons@weil.com
           Sunny.Singh@weil.com

iv.     Counsel to the Consenting Noteholders:
O'Melveny & Myers LLP (as counsel to the Consenting Noteholders)
7 Times Square
New York, NY 10036
Attn:     George A. Davis, Esq.
           Andrew M. Parlen, Esq.
Telephone:  (212) 236-2000
Facsimile:  (212) 236-2061
E-mail:    GDavis@omm.com
           AParlen@omm.com

23.    The Objection Deadline will provide creditors and interest holders with sufficient time to file Objections while still providing the Debtor a meaningful period to respond.  In addition, the Debtor proposes to file its brief in support of confirmation and a reply to any objections no later than three (3) business days before the Combined Hearing.  The proposed

schedule for the Combined Hearing, including the fixing of the Objection Deadline, is in the best interests of the Debtor, its estate, creditors, and all parties in interest.

### C. Approval of Form, Manner, and Sufficiency of Notice of Combined Hearing and Commencement of Chapter 11 Case

24.     A debtor is required to provide all creditors, equity holders, and parties in interest with notice of the commencement of its chapter 11 case.  *See* Fed. R. Bankr. P. 2002(d), 2002(f)(1).

25.     Within two (2) business days of the entry of the Scheduling Order, the Debtor proposes to mail to all known holders of Claims and Interests a notice (the "**Combined Notice**"), substantially in the form annexed as **Exhibit 1** to the Scheduling Order, setting forth, among other things, (i) the notice of commencement of the chapter 11 case, (ii) the date, time, and place of the Combined Hearing, (iii) the instructions for obtaining copies of the Disclosure Statement and Plan, (iv) the Objection Deadline and procedures for filing Objections, and (v) a summary of the Plan, including a chart summarizing the distributions under the Plan.  In addition, the Combined Notice informs parties in interest of the deferral of the Section 341 meeting and that such meeting will not be convened if the Plan is confirmed by the Deadline.

26.     With respect to holders of Notes Claims, the Debtor proposes to send the Combined Notice to such holders as reflected in the records maintained by the Prepetition Trustee as of the close of business on January 5, 2017 (the "**Voting Record Date**").

27.     To provide additional notice to parties in interest in this case, the Debtor proposes to post to a website (the "**Website**") maintained by the Voting Agent various chapter 11 documents, including the following: (a) the Plan, (b) the Disclosure Statement, (c) this Motion and any orders entered in connection with this Motion, and (d) the Combined Notice.  The Website address is:  http://dm.epiq11.com/homercity.

28.     Bankruptcy Rule 2002(l) provides that the Court may order "notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." The Debtor requests that the Court authorize the Debtor, in its discretion, to give supplemental publication notice (the "**Publication Notice**") of the Combined Hearing on a date no less than twenty-eight (28) days prior to the Combined Hearing in a newspaper and trade publication designated by the Debtor.

29.     The proposed service of the Combined Notice will provide sufficient notice to all parties in interest of the commencement of the chapter 11 case, the date, time, and place of the Combined Hearing, and the procedures for asserting Objections.  In addition, the Publication Notice will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Combined Notice.

**D.      Extension and Conditional Waiver of Requirements to Convene Section 341 Meeting and File Schedules and SOFAs**

30.     The Debtor requests that the Scheduling Order provide that:  (i) the time for filing the Schedules and SOFAs be extended until the Deadline, which is sixty (60) days after the Commencement Date; (ii) the 341 Meeting shall not be scheduled by the U.S. Trustee before the Deadline; and (iii) if the Plan is confirmed on or before the Deadline, the requirement to convene a Section 341 Meeting and file the Schedules and SOFAs will be waived, in each case without further order of the Court.  This relief is appropriate under the circumstances, because the Debtor anticipates the near-term confirmation of the Plan and subsequent emergence from chapter 11, with all holders of Allowed General Unsecured Claims paid in full.

1.     **Section 341 Meeting**

31.     The purpose of the Section 341 Meeting is to provide parties in interest with a meaningful opportunity to examine the debtor.  However, Bankruptcy Code section 341(e) provides that

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

32.     The Debtor submits that a deferral of the Section 341 Meeting until the Deadline is appropriate here because solicitation on the Plan was commenced prior to the Commencement Date and the Debtor expects that the Plan will be accepted in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.  The Debtor intends to proceed expeditiously to confirm the Plan and emerge from chapter 11 as quickly as possible.  Therefore, parties in interest are not likely to receive any benefit from the Section 341 Meeting.

33.     This Court has granted the requested waiver in other prepackaged chapter 11 cases.  *See, e.g.*, *In re Am. Gilsonite Co.*, No. 16-12316 (CSS) (Bankr. D. Del. Oct. 26, 2016) (Docket No. 44); *In re Halcón Res. Corp.*, No. 16-11724 (BLS) (Bankr. D. Del. July 29, 2016) (Docket No. 50); *In re Offshore Group Inv. Ltd.*, No. 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) (Docket No. 37); *In re Seegrid Corp.*, No. 14-12391 (BLS) (Bankr. D. Del. Oct. 22, 2014) (Docket No. 26); *In re The Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (Docket No. 80); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (Docket No. 43); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013) (Docket No. 49).

34.    Accordingly, the Debtor proposes that the Section 341 Meeting not be held if the Plan is confirmed by the Deadline.  If, on the other hand, the Section 341 Meeting will be convened, the Debtor will file and serve notice thereof seven (7) days in advance on all known holders of Claims and Interests.

### 2.    Schedules and SOFAs

35.    Section 521 of the Bankruptcy Code requires a debtor to file Schedules and SOFAs unless the Court orders otherwise.  11 U.S.C. § 521(a)(1)(A)–(B).  Schedules and SOFAs must be filed within fourteen (14) days after the petition date unless the bankruptcy court grants an extension of time "on motion for cause shown."  Fed. R. Bankr. P. 1007(c).  In a voluntary chapter 11 case where the debtor has more than 200 creditors and otherwise satisfies the conditions of Local Rule 1007–2, the time within which the debtor must file its schedules and statements is extended to thirty (30) days from the petition date.  Local Rule 1007–1(b).  A further extension may be granted for cause upon filing of a motion.  *Id*.

36.    An extension of time to file the Schedules and SOFAs through and including the Deadline is appropriate in light of the circumstances.  The purposes of filing Schedules and SOFAs are to provide notice to creditors and to disclose information about the debtor to holders of claims.  Under the Debtor's circumstances, the benefits of filing the Schedules and SOFAs are heavily outweighed by their costs.  Completing the Schedules and SOFAs would be time consuming, distracting to the Debtor's advisers and management, and costly to its estate.  No party in interest would be prejudiced by the Court granting such an extension because under the Plan, trade claims and general unsecured claims are unimpaired and will be paid in full.  Indeed, the Debtor is, contemporaneously herewith, filing a motion to pay all such claims in the ordinary course of business.

37.     Accordingly, in light of the facts and circumstances surrounding this prepackaged chapter 11 case, this Court has authority, consistent with section 521(a) of the Bankruptcy Code, to grant the requested relief.  *See, e.g.*, *In re Am. Gilsonite Co.*, No. 16-12316 (CSS) (Bankr. D. Del. Oct. 26, 2016) (Docket No. 44) (granting debtors' motion extending time, and, upon plan confirmation, waiving requirement to file schedules and SOFAs); *In re Halcón Res. Corp.*, No. 16-11724 (BLS) (Bankr. D. Del. July 29, 2016) (Docket No. 50) (same); *In re Offshore Group Inv. Ltd.*, No. 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) (Docket No. 37) (same); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. Aug. 14, 2015) (Docket No. 42) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (Docket No. 54) (same); *In re Hawkeye Renewables, LLC*, No. 09-14461 (KJC), 2010 WL 2745975, at *24 (Bankr. D. Del. June 2, 2010) same); *In re Elec. Components Int'l, Inc.*, 2010 WL 3350305, at *25 (Bankr. D. Del. May 11, 2010) (same).

## E.    Solicitation Procedures and Forms of Solicitation Materials

38.     Prior to the Commencement Date, the Debtor distributed the Disclosure Statement and solicited approval of the Plan from the holders of Claims in Class 3 (Notes Claims).  The Voting Deadline was established for twenty-eight (28) days after commencement of the solicitation in compliance with applicable nonbankruptcy law, if any.  Section 1126(b) of the Bankruptcy Code specifically provides that:

> [A] holder of a claim or interest that has accepted or rejected the Plan before the commencement of the case under this title is deemed to have accepted or rejected such Plan, as the case may be, if –
>
> > (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or
> >
> > (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of such procedures, and enter any orders as the court deems appropriate."  Fed. R. Bankr. P. 3017(e).  As set forth herein, the Solicitation Packages and prepetition Solicitation Procedures utilized by the Debtor are in compliance with the Bankruptcy Code and Bankruptcy Rules.

### 1. Non-Solicitation of Classes Presumed to Accept or Deemed to Reject the Plan

39.    The Plan provides that specific Classes of Claims and Interests are presumed to accept or deemed to reject the Plan.  Specifically, holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 4 (General Unsecured Claims) are unimpaired by the Plan.  Pursuant to Bankruptcy Code section 1126(f), holders of claims or interests in an unimpaired class are "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required." 11 U.S.C. § 1126(f).  Accordingly, holders of Claims in each of the above-mentioned unimpaired Classes are presumed to accept the Plan and were not solicited.  Holders in Class 5 (Intercompany Claims) and Class 6 (Homer City Interests) are not entitled to any distribution or to retain any property pursuant to the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, such holders are deemed to have rejected the Plan and are not entitled to vote.  Accordingly, the Debtor has not solicited votes from such holders.

40.     Pursuant to the Plan, and as provided in the Combined Notice, holders of unimpaired Claims or Interests will be deemed to have consented to the terms of the releases set forth in Section 10.6(b) of the Plan.

41.     With respect to the specific Classes of Claims and Interests that were presumed to accept or deemed to reject the Plan, the Solicitation Procedures described herein comply with the Bankruptcy Code and applicable law, and should be approved.  The Debtor respectfully requests that the Court consider approval of the Solicitation Procedures with respect to these Classes at the Combined Hearing.

42.     The Debtor requests a waiver of the requirement that the Debtor mail copies of the Plan and Disclosure Statement to holders of Claims and Interests presumed to accept or deemed to reject the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders).  Because the Debtor commenced solicitation on the Plan before the Commencement Date, no disclosure statement was "approved" under Bankruptcy Rule 3017(d), and therefore Bankruptcy Rule 3017 is not applicable here.  The Debtor will make the Disclosure Statement and the Plan available at no cost on the Website and will include a summary of the Plan in the Combined Notice.  Moreover, it would be a significant and unnecessary administrative burden on the Debtor to transmit the Disclosure Statement and Plan to holders of Claims or Interests that have been deemed to accept or reject the Plan.  Accordingly, it is not appropriate to require the Debtor to transmit copies of the Solicitation Package to the holders of Claims or Interests not entitled to vote on the Plan.

**2.      Solicitation of Class Entitled to Vote to Accept or Reject the Plan**

43.      Only Class 3 (Notes Claims) is impaired and entitled to vote to accept or reject the Plan.

44.      On January 9, 2017, the Debtor commenced soliciting votes from members of Class 3.  Epiq transmitted copies of the Solicitation Packages to the Nominees (as defined herein) by overnight delivery and instructed Nominees to deliver the Solicitation Packages to the beneficial owners of the Notes by first class mail.  The RSA Parties also received copies of the Solicitation Packages by email.  The voting period will end at 5:00 p.m. (Prevailing Eastern Time) on February 6, 2017.

i.      **Voting Record Date**

45.      Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes, providing that: "[a]n equity security holder or creditor whose claim is based on a security of record . . . shall not be deemed to have accepted or rejected the plan . . . unless the equity security holder or creditor was the holder of record of the security on the date specified in the solicitation of such acceptance or rejection for the purposes of such solicitation."  Fed. R. Bankr. P. 3018(b).

46.      The Solicitation Packages identified January 5, 2017 as the Voting Record Date. Accordingly, the Debtor's designation of the Voting Record Date conforms to the applicable Bankruptcy Rules.

ii.     **Voting Deadline**

47.     On January 9, 2017, the Debtor caused the Voting Agent to distribute the Solicitation Packages to holders of Claims in Class 3 (Notes Claims).  The Debtor established 5:00 p.m. (Prevailing Eastern Time) on February 6, 2017 at 5:00 p.m. as the Voting Deadline thereby establishing a solicitation period of twenty-eight (28) days (the "**Solicitation Period**").

48.     Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims or equity interests in each solicited class and the time for voting was not unreasonably short.  Fed. R. Bankr. P. 3018(b).  Bankruptcy Rule 3018(b) also requires that the solicitation comply with section 1126(b) of the Bankruptcy Code (*i.e.*, that the solicitation comply with applicable nonbankruptcy law or contain "adequate information").  The Debtor submits that the Solicitation Procedures satisfy the standards set forth in Bankruptcy Rule 3018(b) and section 1126(b) of the Bankruptcy Code.

49.     The holders of Claims in Class 3 (Notes Claims) are sophisticated, and many have substantial knowledge of the Debtor's  business  and experience with in-and out-of-court restructurings.  Moreover, before the Solicitation Period, the Debtor and the Consenting Noteholders spent a substantial amount of time negotiating a comprehensive restructuring of the Debtor's capital structure—a process that culminated in the Plan and RSA.  Thus, before the Solicitation Period began, the majority of the holders of Class 3 Claims were already intimately familiar with the terms of the Plan and Disclosure Statement.  Indeed, under the terms of the RSA, holders of approximately 86% of all Class 3 Claims were obligated to vote in favor of the Plan, which includes GE and its affiliates, holders of 16% of Notes Claims.

50.     For these reasons, the Debtor believes that the Solicitation Period is sufficient and appropriate for holders of Claims in Class 3 (Notes Claims) to make an informed decision to accept or reject the Plan.

### iii.     Form of Ballots

51.     Bankruptcy Rule 3017(d) requires that the Debtor use a form of ballot substantially conforming to Official Form No. 14.  The Ballots are based on Official Form No. 14, but were modified to address the particular aspects of this chapter 11 case and to be relevant to Class 3 Claims.

52.     The Debtor distributed two forms of Ballots, (i) a form of Ballot for a beneficial owner holding Notes Claims in its own name or through a nominee (the "**Beneficial Holder Ballot**"), annexed hereto as **Exhibit B-1**, and (ii) a form of Ballot for a nominee that is the registered holder of Note Claims (or agent thereof) (the "**Nominee**") to transmit the votes of one or more beneficial owners (the "**Master Ballot**"), annexed hereto as **Exhibit B-2**.  The Debtor permitted beneficial owners of the Notes to request that their nominee sign and pre-validate the Beneficial Holder Ballot and allow the beneficial owner to submit the Beneficial Holder Ballot directly to the Voting Agent.

53.     Each Ballot contained detailed instructions on how to complete it and how to make any applicable elections.  In particular, the Ballots indicated that, to be counted as a vote to accept or reject the Plan, the Ballots must be properly executed, completed, and delivered to the Voting Agent so as to be received no later than the Voting Deadline; *provided, however*, that beneficial holders of Notes Claims who received a Beneficial Holder Ballot from a Nominee that was not pre-validated, have been advised to return the Beneficial Holder Ballot to such Nominee with sufficient time for the Nominee to complete and return the Master Ballot to the Voting Agent prior to the Voting Deadline.

54.     Each Ballot clearly indicates that, by voting to accept the Plan, the holder will be deemed to consent to the release provisions set forth in section 10.6 of the Plan (which provisions are annexed as Exhibit 2 to the Ballots).  The Ballots also provided that if a holder does not vote either to accept or reject the Plan (abstains) or votes to reject the Plan _and_ in each case, does not check the box in Item 3 of the Ballots indicating an intent to opt out of granting the releases provided in Section 10.6(b) of the Plan, such holder will be deemed to have consented to the release provisions set forth in Section 10.6(b).

55.     Moreover, the materials in the Solicitation Package established and communicated how the Voting Agent would tabulate the votes and elections contained in the Ballots.  Those tabulation rules provided, among other things, that: (i) a timely properly completed Ballot submitted by a holder of claims in Class 3 superseded and revoked any prior Ballot(s) submitted by that holder; (ii) Ballots that attempt to partially accept and partially reject the Plan would not be counted; (iii) illegible Ballots would not be counted; (iv) Ballots containing insufficient information to identify the claimant would not be counted; and (v) Ballots received after the Voting Deadline (provided that the Voting Deadline has not been extended) would not be counted.  As specified on the Ballots, any Ballot that was otherwise properly completed, executed and timely returned to the Voting Agent, but did not indicate an acceptance or rejection of the Plan, or that indicated both an acceptance and rejection of the Plan would not be counted as a vote in determining acceptance or rejection of the Plan.

### 3.     Approval of Procedures for Vote Tabulation

56.     The Debtor respectfully requests that the Court approve the voting and tabulation

procedures described herein in accordance with section 1126(c) and 1126(d) of the Bankruptcy

Code.  Section 1126(c) of the Bankruptcy Code provides as follows:

> A class of claims has accepted a plan if such plan has been accepted by creditors,
> other than any entity designated under subsection (e) of this section, that hold at
> least two-thirds in amount and more than one-half in number of the allowed
> claims of such class held by creditors, other than any entity designated under
> subsection (e) of this section, that have accepted or rejected such plan.

57.     Section 1126(d) of the Bankruptcy Code provides as follows:

> A class of interests has accepted a plan if such plan has been accepted by holders
> of such interests, other than any entity designated under subsection (e) of this
> section, that hold at least two-thirds in amount of the allowed interests of such
> class held by holders of such interests, other than any entity designated under
> subjection (e) of this section, that have accepted or rejected such plan.

58.     In tabulating the votes, the Voting Agent did not and will not count or consider

for any purpose in determining whether the Plan has been accepted or rejected the following

Ballots:  (a) except in the Debtor's sole discretion, any Ballot received after the Voting Deadline,

(b) any Ballot that is illegible or contains insufficient information to permit the identification of

the claimant, (c) any Ballot cast by a person or entity that does not hold a claim in Class 3 (Notes

Claims), (d) any unsigned or non-original Ballot, or (e) except in the Debtor's sole discretion,

any Ballot transmitted to the Voting Agent by telecopy, facsimile, e-mail, or other electronic

means.  As specified on the Ballots, any Ballot that is otherwise properly completed, executed,

and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the

Plan, or that indicates both an acceptance and rejection of the Plan will not be counted as a vote

to accept the Plan.

59.     The Debtor required that the holders of Claims in Class 3 vote all of their Claims

either to accept or reject the Plan.  Notwithstanding Bankruptcy Rule 3018(a), the Debtor

proposes that whenever two or more Ballots are cast voting the same Claim prior to the Voting

Deadline, the last timely Ballot received prior to the Voting Deadline should be deemed to reflect

the voter's intent and to thus supersede any prior Ballot(s), without prejudice to the Debtor's

right to object to the validity of the second Ballot on any basis permitted by law.

60.     Such procedures provided for a fair and equitable voting process and should be

approved.

**F.      Debtor's Prepetition Solicitation Was Exempt from Registration and
Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law**

61.     Section 1126(b) of the Bankruptcy Code provides, in relevant part, as follows:

[A] holder of a claim or interest that has accepted or rejected the Plan before the
commencement of the case under this title is deemed to have accepted or rejected
such Plan, as the case may be, if — (1) the solicitation of such acceptance or
rejection was in compliance with any applicable nonbankruptcy law, rule, or
regulation governing the adequacy of disclosure in connection with such
solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance
or rejection was solicited after disclosure to such holder of adequate information,
as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).  Thus, prepetition solicitation must comply with either generally applicable

federal or state securities laws and regulations (including the registration and disclosure

requirements thereof) or, if such laws and regulations do not apply, the solicited holders must

receive "adequate information" under section 1125 of the Bankruptcy Code.

62.     The prepetition solicitation is exempt from registration pursuant to section 4(a)(2)

and Regulation D of the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to

time, the "**Securities Act**").  Specifically, section 4(a)(2) of the Securities Act creates an

exemption from the registration requirements under the Securities Act for transactions not

involving a "public offering."  The Debtor has complied with the requirements of section 4(a)(2)

and Regulation D of the Securities Act as the prepetition solicitation of acceptances would

qualify for these exemptions.  The solicitation was made only to those holders of Class 3 Claims

(Notes Claims) who are "Accredited Investors" (within the meaning of rule 501(a) of Regulation D of the Securities act).  Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the prepetition solicitation.  As discussed more fully below, the Debtor will seek a determination from the Court at the Combined Hearing that all solicited holders received "adequate information," as defined in section 1125(a) of the Bankruptcy Code, in accordance with section 1126(b)(2) of the Bankruptcy Code.

### G.    Adequacy of Disclosure Statement

63.    At the Combined Hearing, the Debtor will seek a determination that the prepetition solicitation complied with section 1126(b)(2) of the Bankruptcy Code because the Disclosure Statement provided adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code.

64.    Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims or interests with "adequate information."  Section 1125(a)(1) of the Bankruptcy Code provides that:

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

65.    Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.  There will be a balancing of interests

in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. Rep. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365; *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a case-by-case basis," and "largely in the discretion of the bankruptcy court").

66.     The Disclosure Statement is comprehensive, containing descriptions and summaries of: (a) the Plan, (b) the transactions to be effected in connection with the Plan, (c) certain events preceding the commencement of the chapter 11 case, (d) claims asserted against the estate, (e) risk factors affecting the Plan, (f) a liquidation analysis, (g) financial information that would be relevant to creditors' determinations of whether to accept or reject the Plan, and (h) the federal tax law consequences of the Plan.

67.     Accordingly, and for the reasons that will be more fully established at the Combined Hearing, the Disclosure Statement contains adequate information as defined in section 1125(a)(1) of the Bankruptcy Code and should be approved.

**H.     Confirmation of the Plan**

68.     The Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  As noted above, the Debtor has requested that the Court schedule the Combined Hearing at which time the Debtor will seek confirmation of the Plan.  Prior to the Combined Hearing, the Debtor will, if requested by the Court, file a brief and/or affidavit in support of the Plan demonstrating that the Plan satisfies each requirement for confirmation and responding to any objections to confirmation.

**Reservation of Rights**

69.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.

**Notice**

70.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's thirty (30) largest unsecured creditors on a consolidated basis, (iii) counsel to the Consenting Noteholders, (a) O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: George Davis, Esq., Andrew Parlen, Esq., and Joseph Zujkowski, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Sean Beach, Esq.) (iv) counsel to the Collateral Agent, Emmet, Marvin & Martin, LLP (Attn: Thomas A. Pitta, Esq.), (v) counsel to GE (a) Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq. and Sunny Singh, Esq.) and (b) Reed Smith LLP, 1201 N. Market Street, Suite 1500, Wilmington, DE 19801 (Attn: Kurt Gwynne, Esq.), (vi) the Securities and Exchange Commission, (vii) the Internal Revenue Service, (viii) the United States Attorney's Office for the District of Delaware, (ix) the Debtor's banks and financial institutions, and (x) any other party entitled to notice pursuant to Local Rule 9013-1(m) (the "**Notice Parties**").

71.     The Debtor respectfully submits that no further notice is required.  No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE the Debtor respectfully requests entry of the Scheduling Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 11, 2017
    Wilmington, Delaware

                                        /s/ Mark D. Collins
                                        RICHARDS, LAYTON & FINGER, P.A.
                                        Mark D. Collins (No. 2981)
                                        Russell C. Silberglied (No. 3462)
                                        Paul N. Heath (No. 3704)
                                        Joseph C. Barsalona II (No. 6102)
                                        Andrew M. Dean (No. 6147)
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone:    (302) 651-7700
                                        Facsimile:    (302) 651-7701
                                        Email:        collins@rlf.com
                                                      silberglied@rlf.com
                                                      heath@rlf.com
                                                      barsalona@rlf.com
                                                      dean@rlf.com

                                        *Proposed Attorneys for the Debtor and
                                        Debtor in Possession*

**Exhibit A**

**Scheduling Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------x
                                                      :
In re                                                 :     **Chapter 11**
                                                      :
**HOMER CITY**                                        :     **Case No. 17-[_____] (___)**
**GENERATION, L.P.**                                  :
                                                      :     **Re: Docket No. ___**
                     **Debtor.**[1]                   :
------------------------------------------------------x

**ORDER (A) SCHEDULING A COMBINED HEARING ON (I) ADEQUACY OF DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES AND (II) CONFIRMATION OF PLAN; (B) ESTABLISHING PROCEDURES FOR OBJECTING TO DISCLOSURE STATEMENT, SOLICITATION PROCEDURES, AND PLAN; (C) APPROVING FORM, MANNER, AND SUFFICIENCY OF NOTICE OF COMBINED HEARING AND COMMENCEMENT OF CHAPTER 11 CASE; (D) EXTENDING TIME, AND UPON PLAN CONFIRMATION, WAIVING REQUIREMENTS TO (II) CONVENE SECTION 341 MEETING AND (I) FILE STATEMENT OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; AND (E) GRANTING RELATED RELIEF**

Upon the motion, dated January 11, 2017 (the "**Motion**"),[2] of Homer City

Generation, L.P., as debtor and debtor in possession in the above-captioned chapter 11 case (the

"**Debtor**"), pursuant to sections 105, 341, 1125, 1126, 1128, and 1129 of title 11 of the United

States Code (the "**Bankruptcy Code**"), Rules 1007, 2002, 3017, 3018, 3020, 9006, and 9018 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 1007-1, 3017-

1, 3018-1, 3018-2, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an

order (a) scheduling a Combined Hearing to consider (i) the adequacy of the Disclosure

Statement ("**Disclosure Statement**") for *the Prepackaged Chapter 11 Plan of Reorganization of*

---

[1] The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

*Homer City Generation, L.P.* (the "**Plan**") and the Solicitation Procedures, and (ii) confirmation

of the Plan; (b) establishing procedures for objecting to the Disclosure Statement, Solicitation

Procedures, and Plan; (c) approving the form, manner, and sufficiency of notice of the Combined

Hearing and commencement of this chapter 11 case; (d) extending time for the Debtor to (i) file

the Schedules and SOFAs through and including the Deadline (as defined herein) and waiving

the requirement that the Debtor file the Schedules and SOFAs upon confirmation of the Plan and

(ii) convene the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the

"**Section 341 Meeting**") through and including the Deadline and waiving the requirement that

the Debtor convene a Section 341 Meeting if the Plan is confirmed by the Deadline; and

(e) granting related relief, all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been

given as provided in the Motion, and such notice having been adequate and appropriate under the

circumstances; and it appearing that no other or further notice need be provided; and a hearing

having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the

record of the Hearing; and the Court having determined that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and it appearing that the relief

requested in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties

in interest; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor,

2

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The Combined Hearing (at which time the Bankruptcy Court will consider, among other things, the adequacy of the Disclosure Statement and Solicitation Procedures, and confirmation of the Plan) will be held before the Honorable _____, United States Bankruptcy Judge, in courtroom ___ of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, _____ Floor, Wilmington, Delaware, **on _____, 2017 at _____ (Prevailing Eastern Time).**  The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and notice of such adjourned date(s) will be available on the electronic case filing docket.

3.      Any objections to the approval of the Disclosure Statement, the Solicitation Procedures, or confirmation of the Plan must:  (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Rules; and (e) be filed with the Bankruptcy Court, together with proof of service.  In addition to being filed with the Bankruptcy Court, any such responses or objections must be served on the following parties so as to be received by **no later than 4:00 p.m. (Prevailing Eastern Time) on _____, 2017 (the "Objection Deadline")**, on the following parties:

      i.      the Debtor:
            Homer City Generation, L.P.
            1750 Power Plant Road
            Homer City, Pennsylvania, 15748
            Attn:       Matthew L. Weidner, Esq.
            Email:     matthew.weidner@ge.com

      ii.     Proposed counsel to the Debtor:
            Richards, Layton & Finger, P.A.

920 North King Street
Wilmington, DE 19801
Attn:        Mark D. Collins, Esq.
               Russell C. Silberglied, Esq.
               Paul N. Heath, Esq.
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:      Collins@rlf.com
               Silberglied@rlf.com
               Heath@rlf.com

iii.      Counsel to GE:
         Weil, Gotshal & Manges LLP (as counsel to GE)
         767 Fifth Avenue
         New York, NY 10153
         Attn:        Robert J. Lemons, Esq.
                       Sunny Singh, Esq.
         Telephone:  (212) 310-8000
         Facsimile:  (212) 310-8007
         E-mail:      Robert.Lemons@weil.com
                       Sunny.Singh@weil.com

iv.      Counsel to the Consenting Noteholders:
         O'Melveny & Myers LLP (as counsel to the Consenting Noteholders)
         7 Times Square
         New York, NY 10036
         Attn:        George A. Davis, Esq.
                       Andrew M. Parlen, Esq.
         Telephone:  (212) 236-2000
         Facsimile:  (212) 236-2061
         E-mail:      GDavis@omm.com
                       AParlen@omm.com

4.      Objections, if any, not timely filed and served in the manner set forth above may, in the Court's discretion, not be considered and may be overruled.

5.      The Debtor shall file its brief in support of confirmation of the Plan, if any, and its reply to any objections no later than three (3) business days before the Combined Hearing.

6.      The Debtor is authorized to combine the notice of the Combined Hearing and notice of the commencement of the chapter 11 case.

4

7. Notice of the Combined Heading as proposed in the Motion and the form of Combined Notice, substantially in the form attached hereto as **Exhibit 1**, shall be deemed good and sufficient notice of the Combined Hearing and no further notice need be given; *provided, however*, that any provision of Bankruptcy Rule 3017(d) requiring the Debtor to distribute the Disclosure Statement and the Plan to parties not entitled to vote, whether because they are unimpaired or because they are deemed to reject the Plan, or any parties in interest other than as prescribed in this Order, shall be waived.  The Debtor shall cause Epiq Bankruptcy Solutions, LLC ("**Epiq**" or the "**Voting Agent**") to mail a copy of the Combined Notice to the parties set forth in the Motion within two (2) business days of the entry of this Scheduling Order or as soon as reasonably possible.

8. Substantially contemporaneously with the service of the Combined Notice, the Debtor shall cause to be posted to the Website various chapter 11 related documents, including: (a) the Plan, (b) the Disclosure Statement, (c) the Motion and any orders entered in connection with the Motion, and (d) the Combined Notice.  The Debtor's Website address is: http://dm.epiq11.com/homercity.

9. The Debtor is authorized, pursuant to Bankruptcy Rule 2002(*l*), to give supplemental publication notice of the Combined Hearing by publication in a newspaper designated by the Debtor in its sole discretion and on a date no less than twenty-eight (28) days prior to the Combined Hearing.

10. To the extent that section 1125(b) of the Bankruptcy Code requires the Debtor's prepetition solicitation of acceptances for the Plan to be pursuant to an approved disclosure statement in order to continue on a postpetition basis, the Court conditionally approves the Disclosure Statement as having adequate information as required by section 1125 of the

5

Bankruptcy Code without prejudice to any party in interest objecting to the Disclosure Statement at the Confirmation Hearing.

11.     The notice procedures set forth herein constitute good and sufficient notice of the Combined Hearing, the commencement of the chapter 11 case, and the deadline and procedures for objecting to the adequacy of the Disclosure Statement and the Solicitation Procedures, and/or confirmation of the Plan, and no other or further notice shall be necessary;

12.     The time within which the Debtor shall file its Schedules and SOFAs is extended through and including March 12, 2017 (the "**Deadline**"), without prejudice to the Debtor's right to file a separate motion seeking further extensions of the time within which to file the Schedules and SOFAs or seeking additional relief from this Court regarding the filing of, or waiver of the requirement to file, the Schedules and SOFAs.

13.     Notwithstanding paragraph 12 above, the requirement that the Debtor file the Schedules and SOFAs is permanently waived effective upon the date of confirmation of the Plan, *provided that* confirmation occurs on or before the Deadline.

14.     The Section 341 Meeting shall be deferred until the Deadline and shall be waived unless the Plan is not confirmed by the Deadline.

15.     The Ballots, substantially in the forms attached to the Motion as **Exhibits B-1 and B-2**, are approved.

16.     The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots are approved.

17.     The Debtor is authorized to take all action necessary to effectuate the relief granted in this Order.

6

18.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2017
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1 to Scheduling Order</u>**

**Combined Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
-------------------------------------------------------x
                                    :
In re                               :        Chapter 11
                                    :
HOMER CITY                          :        Case No. 17-[_____] (___)
GENERATION, L.P.                    :
                                    :
              Debtor.¹              :
-------------------------------------------------------x
```

**NOTICE OF COMMENCEMENT OF CASE**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**-AND-**

**SUMMARY OF CHAPTER 11 PLAN AND NOTICE OF HEARING TO CONSIDER**
**(A) ADEQUACY OF DISCLOSURE STATEMENT AND SOLICITATION**
**PROCEDURES; (B) CONFIRMATION OF PREPACKAGED PLAN OF**
**REORGANIZATION; AND (C) RELATED MATERIALS**

**PLEASE TAKE NOTICE THAT:**

1.      On January 11, 2017 (the "**Commencement Date**"), Homer City Generation, L.P., as debtor and debtor in possession (the "**Debtor**" or "**Homer City**"), commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").   On the Commencement Date, the Debtor filed the *Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.*, dated as of January 9, 2017 (the "**Plan**"),² and a disclosure statement for the Plan, dated as of January 9, 2017 (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

**The Plan and Disclosure Statement**

2.      Copies of the Plan and Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtor's voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), at http://dm.epiq11.com/homercity.   Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at +1 (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Homer" in the subject line.

---

¹ The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

3.      The Plan provides for a reorganization transaction pursuant to which:

- The 8.137% Senior Secured Notes due 2019 and 8.734% Senior Secured Notes due 2026 (together, the "**Notes**") issued pursuant to the Indenture, dated as of December 14, 2012, between Homer City, as Issuer, and The Bank of New York Mellon, as trustee and collateral agent (the "**Prepetition Trustee**") will be cancelled and the holders of Notes Claims (other than GE, as defined below) will receive their pro rata share of the common stock and ownership interests in Reorganized Homer City, plus their pro rata share of the GE Remainder (as defined below);

- On account of their Notes Claims, General Electric Company and any Affiliates thereof other than the Debtor ("**GE**") will receive 66.67% of their pro rata share of the common stock and ownership interests in Reorganized Homer City, with the remaining 33.33% to be distributed to the other holders of Notes Claims, and no share of the GE Remainder;

- Holders of General Unsecured Claims who were not paid pursuant to the All Trade Motion will be will be paid in cash in full, subject to all defenses or disputes the Debtor may assert as to validity or amount of such Claims, including any applicable caps or limitations imposed on such claims pursuant to the Bankruptcy Code;

- Administrative, Priority Tax, Other Priority Claims, and Other Secured Claims will be paid in full; and

- Intercompany Claims (which do not include Notes Claims held by GE or the GE Ordinary Course Claims) and existing Interests in Homer City will be cancelled.

4.      Only holders of the Notes Claims (Class 3) are entitled to vote to accept or reject the Plan.  All other classes of Claims or Interests are either presumed to accept or deemed to reject the Plan.  On January 9, 2017, the Debtor commenced solicitation of votes to accept the Plan from the holders of Claims in Class 3 of record as of January 5, 2017.  **The deadline for the submission of votes to accept or reject the Plan is February __, 2017 at 5:00 p.m. (Prevailing Eastern Time).**

**Combined Hearing**

5.      A combined hearing to consider (a) the adequacy of (i) the Disclosure Statement and (ii) the solicitation procedures utilized in connection with the solicitation of votes to accept or reject the Plan (the "**Solicitation Procedures**") and (b) confirmation of the Plan, and any objections thereto, will be held before the Honorable _____, United States Bankruptcy Judge, in Room _____ of the United States Bankruptcy Court, 824 Market Street, _____ Floor, Wilmington, Delaware 19801, on **February ___, 2017 at __:__ _.m. (Prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "**Combined Hearing**").  The

Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and notice of such adjourned date(s) will be available on the electronic case filing docket and the Voting Agent's website at http://dm.epiq11.com/homercity.

6.      Any objections to the Disclosure Statement, the Solicitation Procedures, and/or confirmation of the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the following parties so as to be received by **no later than February __, 2017, at 4:00 p.m. (Prevailing Eastern Time) (the "Objection Deadline"):**

| | | |
|---|---|---|
| i. | the Debtor: | |
| | Homer City Generation, L.P. | |
| | 1750 Power Plant Road | |
| | Homer City, Pennsylvania, 15748 | |
| | Attn: | Matthew L. Weidner, Esq. |
| | Email: | matthew.weidner@ge.com |
| | | |
| ii. | Proposed counsel to the Debtor: | |
| | Richards, Layton & Finger, P.A. | |
| | 920 North King Street | |
| | Wilmington, DE 19801 | |
| | Attn: | Mark D. Collins, Esq. |
| | | Russell C. Silberglied, Esq. |
| | | Paul N. Heath, Esq. |
| | Telephone: | (302) 651-7700 |
| | Facsimile: | (302) 651-7701 |
| | E-mail: | Collins@rlf.com |
| | | Silberglied@rlf.com |
| | | Heath@rlf.com |
| | | |
| iii. | Counsel to GE: | |
| | Weil, Gotshal & Manges LLP (as counsel to GE) | |
| | 767 Fifth Avenue | |
| | New York, NY 10153 | |
| | Attn: | Robert J. Lemons, Esq. |
| | | Sunny Singh, Esq. |
| | Telephone: | (212) 310-8000 |
| | Facsimile: | (212) 310-8007 |
| | E-mail: | Robert.Lemons@weil.com |
| | | Sunny.Singh@weil.com |

iv.        Counsel to the Consenting Noteholders:
           O'Melveny & Myers LLP (as counsel to the Consenting Noteholders)
           7 Times Square
           New York, NY 10036
           Attn:          George A. Davis, Esq.
                          Andrew M. Parlen, Esq.
           Telephone:     (212) 236-2000
           Facsimile:     (212) 236-2061
           E-mail:        GDavis@omm.com
                          AParlen@omm.com

## Section 341(a) Meeting

7.        A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") will be deferred until March 12, 2017. **If the Plan is confirmed by March 12, 2017, the Debtor will <u>not</u> convene a Section 341(a) Meeting.** If the Section 341(a) Meeting will be convened, the Debtor will file, serve on the parties on whom it served this notice, and post on the Voting Agent's website at http://dm.epiq11.com/homercity, not less than seven (7) days before the date scheduled for such meeting, a notice of the date, time, and place of the Section 341(a) Meeting. The meeting may be adjourned or continued from time to time by notice at the Section 341(a) Meeting, without further notice to the creditors.

## Summary of the Plan[3]

8.        **Classification and Treatment.** A chart summarizing the treatment provided by the Plan to each class of Claims and Interests is included in Annex A.

9.        **Releases under Section 10.6(b). Please be advised that under the Plan, the following holders are deemed to have granted the releases of Claims or Interests contained in Section 10.6(b) of the Plan:**

                    (i)        **each other Released Party;**

                    (ii)       **each holder of an Impaired Claim or Interest that is not a Released Party, except any such holder that voted to reject, or abstained from voting on, the Plan <u>and</u> also checked the box on the applicable ballot or notice indicating that they opt out of granting the releases provided in the Plan;**

                    (iii)      **each holder of an Unimpaired Claim that does not timely object to the releases provided for in the Plan; and**

---

[3] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan. The Plan provisions that relate to paragraphs 8–11 of this notice are set forth in **Annex A**.

4

(iv)      **with respect to any Entity in the foregoing clauses (i)-(iii), such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entity's respective heirs, executors, estates, servants and nominees**

**Election to withhold consent to the releases contained within the Plan is at the holders' option.**

10.     The Plan also contains other release, discharge, and injunction provisions that may affect your rights against the debtor.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Dated: January __, 2017
     Wilmington, Delaware

*/s/ Draft*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Joseph C. Barsalona II (No. 6102)
Andrew M. Dean (No. 6147)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              silberglied@rlf.com
              heath@rlf.com
              barsalona@rlf.com
              dean@rlf.com

*Proposed Attorneys for the Debtor and Debtor in Possession*

**<u>Annex A</u>**

**Selected Plan Provisions**

## Classification and Treatment Chart

| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan | Approx. Percentage Recovery[1] |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | In full satisfaction of its Claim, cash equal to the full amount of its Claim or other such treatment rendering such claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. | Unimpaired | No (Presumed to Accept) | 100% |
| 2 | Other Secured Claims | In full satisfaction of its Claim: (a) payment in full in cash; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. | Unimpaired | No (Presumed to Accept) | 100% |
| 3 | Notes Claims | Except to the extent that a holder of an Allowed Notes Claim agrees to a less favorable treatment of such Claim, (i) each such holder (other than GE) shall receive, in exchange for the contribution of such Notes Claim to New Holdco, such holder's Pro Rata share of one hundred percent (100%) of the NewCo Interests, plus such holder's Pro Rata share of the GE Remainder and (ii) GE, on account of the GE Notes Claims, shall receive in exchange for the contribution of the GE Notes Claims to New Holdco, 66.67% of its Pro Rata share of the NewCo Interests and no share of the GE Remainder. | Impaired | Yes | Notes Claims<br><br>36.7% - 46.5%<br><br><br>GE Notes Claims<br>23.0% - 29.2% |
| 4 | General Unsecured Claims | In full satisfaction of its Claim, each holder of an Undisputed General Unsecured Claim who was not paid pursuant to the All Trade Order shall receive (i) payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after such General Unsecured Claim becomes | Unimpaired | No (Presumed to Accept) | 100% |

---

[1] The ranges set forth under Approximate Percentage Recovery are based on the range of reorganized equity value of the Debtor as described in the Valuation Analysis.

| | | | | | |
|---|---|---|---|---|---|
| | | Allowed, in each case, or as soon as reasonably practicable thereafter, or (ii) such other treatment so as to render such holder's General Unsecured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. | | | |
| 5 | Intercompany Claims | Each Holder of an Intercompany Claim,[2] if any, shall not receive any consideration or recovery under the Plan on account of its Intercompany Claim, and on the Effective Date, all Intercompany Claims shall be cancelled and discharged. | Impaired | No (Deemed to Reject) | 0% |
| 6 | Homer City Interests | On the Effective Date, all Homer City Interests shall be cancelled, extinguished, and discharged. | Impaired | No (Deemed to Reject) | 0% |

---

[2] For the avoidance of doubt, this term does not include Notes Claims held by GE or the GE Ordinary Course Claims.

2

## Selected Defined Terms

**"Consenting Noteholders"** means the Noteholders (other than GE) that are party to the Restructuring Support Agreement, together with their permitted successors and assigns, and any subsequent Noteholder that becomes party to the Restructuring Support Agreement in accordance with the terms of the Restructuring Support Agreement.

**"Disbursing Agent"** means any Entity (including the Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI the Plan.

**"Exculpated Parties"** means collectively: (a) the Debtor; (b) the Reorganized Debtor; (c) the Disbursing Agent; (d) any statutory committee appointed in the Chapter 11 Case; (e) each Entity that has been or is a party to the Restructuring Support Agreement; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

**"Exit Agents"** means, collectively, the Exit Administrative Agent, the Exit Collateral Agent (as defined in the Plan) and the Exit Depositary Bank (as defined in the Plan).

**"Exit Administrative Agent"** means an administrative agent under the Exit Facility Credit Agreement (as defined in the Plan) acceptable to the Debtor or the Reorganized Debtor, as applicable, and the Requisite Noteholders.

**"GE"** means General Electric Company and any Affiliates thereof, other than the Debtor.

**"MetLife"** means Metropolitan Life Insurance Company, a New York corporation.

**"Prepetition Trustee"** means The Bank of New York Mellon, as trustee and collateral agent under the Indenture.

**"Released Parties"** means collectively: (a) the Debtor; (b) the Reorganized Debtor; (c) each person or Entity that has been or is a party to the Restructuring Support Agreement; *provided that* any such party shall only be a Released Party if it has not objected to confirmation of the Plan (any objection by GE to cure amounts in connection with the assumption of a GE Ordinary Course Contract shall not be deemed an objection to confirmation for purpose of the definition of "Released Parties"); (d) the Prepetition Trustee; (e) the Disbursing Agent; (f) MetLife; (g) each Noteholder that votes for, and does not object to, the Plan; (h) the Exit Arranger; (i) the Exit Lenders; (j) each of the Exit Agents; and (k) with respect to each of the foregoing Entities in clauses (a) through (j), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

**"Reorganized Homer City or Reorganized Debtor"** means the Debtor as reorganized on the Effective Date in accordance with the Plan.

RLF1 16585796V.1

### Section 10.3 of the Plan: Discharge of Claims and Termination of Interests

Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any Affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date.  Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor.

### Section 10.4 of the Plan: Term of Injunctions or Stays

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case, including under section 105 or 362 of the Bankruptcy Code or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### Section 10.5 of the Plan: Injunction

(a)       Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, shareholders, managers, members, partners, and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(b)       Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or Interests in the Debtor (regardless of whether proof of such Claims or Interests has been filed) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, shareholders, managers, members, partners, and Affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

RLF1 16585796V.1

(c)    By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.5 of the Plan.

(d)    The injunctions in Section 10.5 of the Plan shall extend to any successors of the Debtor and the Reorganized Debtor and their respective property and interests in property.

## Section 10.6(a) of the Plan: Releases by the Debtor

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents or an assumed contract that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, the Estate or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement), the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Definitive Documents, the Exit Facility Engagement Letter, the NewCo Agreements, the Amended Organizational Documents, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, and upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, *that*, nothing in Section 10.6(a) of the Plan shall be construed to release the Released Parties from (a) intentional fraud or criminal conduct as determined by a Final Order or (b) any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Exit Facility Documents, the NewCo Agreements, and the Plan Supplement) executed by such party to implement the Plan.

## Section 10.6(b) of the Plan: Releases by Holders of Claims or Interests

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after

the Effective Date, the Debtor, Reorganized Debtor, and Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by:

i.  each other Released Party;

ii.  each holder of an Impaired Claim or Interest that is not a Released Party, except any such holder that voted to reject, or abstained from voting on, the Plan and also checked the box on the applicable ballot or notice indicating that they opt out of granting the releases provided in the Plan;

iii.  each holder of an Unimpaired Claim that does not timely object to the releases provided for in the Plan; and

iv.  with respect to any Entity in the foregoing clauses (i)-(iii), such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entity's respective heirs, executors, estates, servants and nominees;

in each case, from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, purchase, sale or rescission or the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement), the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Definitive Documents, the Exit Facility Engagement Letter, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, and upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, *that*, nothing in Section 10.6(b) of the Plan shall be construed to release the Released Parties from (a) intentional fraud or criminal conduct as determined by a Final Order or (b) any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Exit Facility Documents, the NewCo Agreements, and the Plan Supplement) executed by such party to implement the Plan.

## Section 10.7 of the Plan: Exculpation

Notwithstanding anything in the Plan to the contrary, and to the maximum extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any holder of a

Claim or Interest or any other party in interest in the Chapter 11 Case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect Affiliates, or any of their successors or assigns, for any act or omission (both before and after the Commencement Date) in connection with, related to, or arising out of, the Chapter 11 Case, the Restructuring Support Agreement, the Plan (including, without limitation, the Plan Supplement), the Definitive Documents, the Indenture, any settlement or agreement in the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan and the Definitive Documents, the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan, whether such distribution occurs after the Effective Date, the administration of the Plan or property to be distributed hereunder, or agreements, instruments, other documents, or negotiations regarding or concerning any of the foregoing; *provided*, *that*, nothing in Section 10.7 of the Plan shall be construed to exculpate the Exculpated Parties from intentional fraud or criminal conduct as determined by a Final Order. The Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

RLF1 16585796V.1

## Exhibit B-1

### Form of Master Ballot for Note Claims

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 (Voluntary) |
| **HOMER CITY GENERATION, L.P.** | IMPORTANT: No chapter 11 case has been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| **Debtor.** | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF HOMER CITY GENERATION, L.P.

### MASTER BALLOT FOR: CLASS 3 – NOTES CLAIMS

> **PLEASE READ THIS ENTIRE MASTER BALLOT BEFORE COMPLETING. PLEASE COMPLETE, DATE, AND SIGN THIS MASTER BALLOT AND RETURN IT TO THE VOTING AGENT (AS DEFINED BELOW). THIS MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE FEBRUARY 6, 2017 AT 5:00 P.M. (EASTERN STANDARD TIME) (THE "<u>VOTING DEADLINE</u>").**

This master ballot (the "**Master Ballot**") is being submitted to brokers, dealers, commercial banks, trust companies, or other agent nominees ("**Nominees**") of beneficial holders of certain Claims (a "**Beneficial Holder**") against Homer City Generation, L.P. (the "**Debtor**" or "**Homer City**")[1] in connection with the Debtor's solicitation of votes to accept or reject the *Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.* (as amended, modified, or supplemented from time to time, the "**Plan**")[2] in connection with the case (the "**Chapter 11 Case**") to be commenced by the Debtor under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

Specifically, this Master Ballot is being submitted to Nominees of Beneficial Holders that are Eligible Holders of Claims against the Debtor arising under or relating to that certain Indenture, dated as of December 14, 2012, between Homer City, as Issuer, and The Bank of New York Mellon, as trustee and collateral agent, pursuant to which Homer City issued certain 8.137% Senior Secured Notes due 2019 and 8.734% Senior Secured Notes due 2026 (the "**Notes Claims**" and the holders of such Notes Claims, the "**Noteholders**"). Nominees should use this Master Ballot to tabulate votes on behalf of holders of Notes Claims to accept or reject the Plan.

> **BALLOTS ARE ONLY BEING SOLICITED FROM <u>ELIGIBLE</u> HOLDERS OF CLASS 3 NOTES CLAIMS. TO BE AN ELIGIBLE HOLDER, A NOTEHOLDER MUST BE, AS OF JANUARY 5, 2017 (THE "<u>VOTING RECORD DATE</u>"), (I) AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "<u>SECURITIES ACT</u>") AND CERTIFY TO THAT EFFECT, OR WHO THE DEBTOR REASONABLY BELIEVES IS AN ACCREDITED INVESTOR, AND (II) A**

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

> **BENEFICIAL OWNER OF NOTES CLAIMS.  THE DEFINITION OF "ACCREDITED INVESTOR" IS ATTACHED HERETO AS EXHIBIT 1.  IF A BENEFICIAL HOLDER IS A HOLDER OF CLASS 3 NOTES CLAIMS AND IS NOT AN <u>ELIGIBLE</u> NOTEHOLDER, SUCH HOLDER'S VOTE WILL NOT BE COUNTED.**

The Plan is attached as **Exhibit A** to the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**").  The Disclosure Statement provides information to assist holders of Claims and Interests in deciding whether to accept or reject the Plan.  If you or a Noteholder do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtor's solicitation agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling +1 (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "HOMER" in the subject line and requesting that a copy be provided to you.  You should <u>already have received and forwarded</u> to Beneficial Holders the Disclosure Statement and the form of ballot for such holders (the "**Beneficial Holder Ballot**") with a return envelope addressed to you, or as provided in the Disclosure Statement and attached instructions.

> **IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 3**
>
> As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 Case is commenced, the Plan is confirmed, and the Effective Date occurs, holders of Allowed Notes Claims will receive their Pro Rata share of share of one hundred percent (100%) of the NewCo Interests, plus their Pro Rata share of the GE Remainder; <u>provided</u>, <u>that</u>, GE, on account of the GE Notes Claims, shall receive 66.67% of its Pro Rata share of the NewCo Interests and no share of the GE Remainder.

After the Debtor commences its Chapter 11 Case, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on the Beneficial Holders if: (i) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on the Beneficial Holders whether or not a Beneficial Holder votes or if a Beneficial Holder votes to reject the Plan.

The Debtor intends to file its Chapter 11 Case before the Voting Deadline.  Receipt of this Master Ballot does not signify that a Beneficial Holder's Claim(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 Notes Claims.

2

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN**

      **If a Beneficial Holder votes to accept the Plan, the Beneficial Holder shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Section 10.5, 10.6, and 10.7 of the Plan and attached hereto as <u>Exhibit 2</u>.**

      **If a Beneficial Holder (i) does not vote either to accept or to reject the Plan (abstains), or (ii) votes to reject the Plan, and in either case does not opt out of granting the releases set forth in the Plan, such Beneficial Holder shall be deemed to have consented to the releases contained in Section 10.6(b) of the Plan and attached hereto as <u>Exhibit 2</u>.**

      **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

3

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

---

PLEASE COMPLETE ALL OF THE ITEMS BELOW.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED, THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

---

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐    is a Nominee for the Beneficial Holders in the principal amount of Class 3 Notes Claims listed in Item 2 below and is the registered holder of such Class 3 Second Lien Notes Claims;

☐    is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Class 3 Notes Claims in the principal amount listed in Item 2 below; or

☐    has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the principal amount of Class 3 Notes Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 3 Notes Claims listed in Item 2 below.

**Items 2.  Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Holders in respect of their Class 3 Notes Claims and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

---

[3] Indicate in the appropriate column the principal amount of the Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

4

| Your Customer Account Number for Each Beneficial Holder of Class 3 Notes Claims that Voted | Principal Amount of Notes Claims Held by Your Customer | Item 2. Vote on Plan | | Item 3. Optional Release Election |
|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 |
| 1. | | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ |

**Item 4.   Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 3 Notes Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 4 of the Beneficial Holder Ballot, identifying any Class 3 Notes Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Holder That Completed Item 3 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number | Name of Beneficial Holder | Principal Amount of Class 3 Notes Claim Voted | CUSIP Number of other Class 3 Notes Claims Voted |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Item 5.  Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)      (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot, and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 3 Notes Claims through the undersigned; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)      the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 3 Notes Claims through the undersigned; (ii) the respective amounts of Class 3 Notes Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(c)      if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 3 Notes Claims, the undersigned confirms and attests to each of the certifications in Items 4 and 5 of the Beneficial Holder Ballot;

(d)      each such Beneficial Holder has certified to the undersigned that such beneficial holder is a Beneficial Holder, an "accredited investor" as defined in Rule 501 of Regulation D of the Securities Act and is otherwise eligible to vote on the Plan; and

(e)      the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one (1) year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtor, as the case may be, if so ordered.

6

**Item 6.  Nominee Information and Signature.**

Name of Nominee:

_____

(Print or Type)
Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____

(Print or Type)

_____

Signature:

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Date Completed:_____

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

> **HOMER BALLOT PROCESSING**
> **C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
> **777 THIRD AVENUE, 12TH FLOOR**
> **NEW YORK, NY 10017**
>
> **TELEPHONE: +1 (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS FEBRUARY 6, 2017 AT 5:00 P.M. (EASTERN TIME).**

RLF1 16076744V.3

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING +1 (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HOMER" IN THE SUBJECT LINE.

## MASTER BALLOT INSTRUCTIONS

1. To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot (which may be a pre-validated ballot, as described in ¶ 2 below), with a return envelope addressed to you (or the Voting Agent in the case of a pre-validated ballot), so such holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Voting Agent, so that the Voting Agent *actually receives* the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated ballot, return their Beneficial Holder Ballot to the Voting Agent before the Pre-Validated Voting Deadline.

2. You may pre-validate the Beneficial Holder Ballots of the Consenting Noteholders by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the name of the Nominee and DTC Participant Number, (ii) the amount of the Notes Claims held by the Nominee for the Eligible Holder, and (iii) forwarding such Beneficial Holder Ballot, together with the Disclosure Statement, a preaddressed, postage-paid return envelope addressed to, and provided by, the Voting Agent.  The Eligible Holder will be required to complete the information requested in Item 2 and Item 3 of the Beneficial Holder Ballot and return the Beneficial Holder Ballot directly to the Voting Agent so that it is received before the Voting Deadline.

3. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you and the Beneficial Holders if (i) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

4. With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Voting Agent in accordance with these instructions.

5. Please keep any records of Beneficial Holder Ballots, including records of the Eligible Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one (1) year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

6. If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 3 Notes Claims for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims or Interests.

7. In the event that (i) the Debtor revokes or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be

8

null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

9.  The Master Ballot does not constitute, and shall not be deemed to be, a proof of Claim or Interest or an assertion or admission of a Claim or Interest.

10. The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any ballot cast by a Person that does not hold a Claim or Interest in a Class entitled to vote on the Plan, (c) any unsigned ballot, (d) any ballot that does not contain an original signature, and (e) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

11. If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Voting Agent is at your election and risk.

12. If a Beneficial Holder submits ballots for multiple Class 3 Notes Claims, whether held in other accounts or other record names, and such ballots indicate *different* votes to accept or reject the Plan, then all such ballots will not be counted.

13. If a Beneficial Holder submits more than one ballot voting the same Claims or Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

14. The Master Ballot should not be sent to the Debtor, the Bankruptcy Court, or the Debtor's financial or legal advisors.

15. There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtor will not resolicit votes for acceptance or rejection of the Plan.

16. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

17. IF YOU HAVE ANY QUESTIONS CONCERNING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT +1 (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HOMER" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

18. THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

> **HOMER BALLOT PROCESSING**
> **C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
> **777 THIRD AVENUE, 12TH FLOOR**
> **NEW YORK, NY 10017**

> **TELEPHONE: +1 (646) 282-2500 OR (866) 734-9393 (TOLL FREE)**

**THE VOTING DEADLINE IS FEBRUARY 6, 2017 AT 5:00 P.M. (EASTERN TIME).**

10

**<u>EXHIBIT 1</u>**

**Accredited Investor**

## "Accredited Investor"

Rule 501(a) under Regulation D of the Securities Act of 1933 (the "Act"), in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the Debtor reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(1) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(a)(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his vote exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose vote is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of the Securities Act; and

(8) Any entity in which all of the equity owners are accredited investors.

## EXHIBIT 2

**Plan Injunction, Releases, and Exculpation**

## Plan Injunction, Releases, and Exculpation

The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## Selected Defined Terms

**"Consenting Noteholders"** means the Noteholders (other than GE) that are party to the Restructuring Support Agreement, together with their permitted successors and assigns, and any subsequent Noteholder that becomes party to the Restructuring Support Agreement in accordance with the terms of the Restructuring Support Agreement.

**"Disbursing Agent"** means any Entity (including the Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI the Plan.

**"Exculpated Parties"** means collectively: (a) the Debtor; (b) the Reorganized Debtor; (c) the Disbursing Agent; (d) any statutory committee appointed in the Chapter 11 Case; (e) each Entity that has been or is a party to the Restructuring Support Agreement; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

**"Exit Agents"** means, collectively, the Exit Administrative Agent, the Exit Collateral Agent (as defined in the Plan) and the Exit Depositary Bank (as defined in the Plan).

**"Exit Administrative Agent"** means an administrative agent under the Exit Facility Credit Agreement (as defined in the Plan) acceptable to the Debtor or the Reorganized Debtor, as applicable, and the Requisite Noteholders.

**"GE"** means General Electric Company and any Affiliates thereof, other than the Debtor.

**"MetLife"** means Metropolitan Life Insurance Company, a New York corporation.

**"Prepetition Trustee"** means The Bank of New York Mellon, as trustee and collateral agent under the Indenture.

**"Released Parties"** means collectively: (a) the Debtor; (b) the Reorganized Debtor; (c) each person or Entity that has been or is a party to the Restructuring Support Agreement; *provided that* any such party shall only be a Released Party if it has not objected to confirmation of the Plan (any objection by GE to cure amounts in connection with the assumption of a GE Ordinary Course Contract shall not be deemed an objection to confirmation for purpose of the definition of "Released Parties"); (d) the Prepetition Trustee; (e) the Disbursing Agent; (f) MetLife; (g) each Noteholder that votes for, and does not object to, the Plan; (h) the Exit Arranger; (i) the Exit Lenders; (j) each of the Exit Agents; and (k) with respect to each of the foregoing Entities in clauses (a) through (j), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

**"Reorganized Homer City or Reorganized Debtor"** means the Debtor as reorganized on the Effective Date in accordance with the Plan.

RLF1 16076744V.3

### Section 10.3 of the Plan: Discharge of Claims and Termination of Interests

Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any Affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date.  Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor.

### Section 10.4 of the Plan: Term of Injunctions or Stays

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case, including under section 105 or 362 of the Bankruptcy Code or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### Section 10.5 of the Plan: Injunction

(a)     Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, shareholders, managers, members, partners, and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(b)     Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or Interests in the Debtor (regardless of whether proof of such Claims or Interests has been filed) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, shareholders, managers, members, partners, and Affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)     By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.5 of the Plan.

(d)     The injunctions in Section 10.5 of the Plan shall extend to any successors of the Debtor and the Reorganized Debtor and their respective property and interests in property.

RLF1 16076744V.3

## Section 10.6(a) of the Plan: Releases by the Debtor

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents or an assumed contract that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, the Estate or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement), the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Definitive Documents, the Exit Facility Engagement Letter, the NewCo Agreements, the Amended Organizational Documents, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, and upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, *that*, nothing in Section 10.6(a) of the Plan shall be construed to release the Released Parties from (a) intentional fraud or criminal conduct as determined by a Final Order or (b) any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Exit Facility Documents, the NewCo Agreements, and the Plan Supplement) executed by such party to implement the Plan.

## Section 10.6(b) of the Plan: Releases by Holders of Claims or Interests

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Debtor, Reorganized Debtor, and Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by:

    i.        each other Released Party;

    ii.       each holder of an Impaired Claim or Interest that is not a Released Party, except any such holder that voted to reject, or abstained from voting on, the Plan <u>and</u> also checked the box on the applicable ballot or notice indicating that they opt out of granting the releases provided in the Plan;

    iii.      each holder of an Unimpaired Claim that does not timely object to the releases provided for in the Plan; and

iv

iv.        with respect to any Entity in the foregoing clauses (i)-(iii), such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entity's respective heirs, executors, estates, servants and nominees;

in each case, from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, purchase, sale or rescission or the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement), the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Definitive Documents, the Exit Facility Engagement Letter, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, and upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, *that*, nothing in Section 10.6(b) of the Plan shall be construed to release the Released Parties from (a) intentional fraud or criminal conduct as determined by a Final Order or (b) any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Exit Facility Documents, the NewCo Agreements, and the Plan Supplement) executed by such party to implement the Plan.

## Section 10.7 of the Plan: Exculpation

Notwithstanding anything in the Plan to the contrary, and to the maximum extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any holder of a Claim or Interest or any other party in interest in the Chapter 11 Case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect Affiliates, or any of their successors or assigns, for any act or omission (both before and after the Commencement Date) in connection with, related to, or arising out of, the Chapter 11 Case, the Restructuring Support Agreement, the Plan (including, without limitation, the Plan Supplement), the Definitive Documents, the Indenture, any settlement or agreement in the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan and the Definitive Documents, the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan, whether such distribution occurs after the Effective Date, the administration of the Plan or property to be distributed hereunder, or agreements, instruments, other documents, or negotiations regarding or concerning any of the foregoing; *provided*, *that*, nothing in Section 10.7 of the Plan shall be construed to exculpate the Exculpated Parties from intentional fraud or criminal conduct as determined by a Final Order.  The Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Exhibit B-2**

**Form of Beneficial Ballot for Notes Claims**

Beneficial Ballot for Class 3

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 (Voluntary) |
| **HOMER CITY GENERATION, L.P.** | IMPORTANT: No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| **Debtor.** | |

### BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF HOMER CITY GENERATION, L.P.

### BALLOT FOR: CLASS 3 –NOTES CLAIMS

### Only Eligible Noteholders may vote to accept or reject the Plan using this Ballot.

HOLDERS OF CLASS 3 NOTES CLAIMS SHOULD READ THIS ENTIRE BALLOT, THEN COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.  YOUR VOTE (WHETHER ON A MASTER BALLOT SUBMITTED BY YOUR NOMINEE (AS DEFINED HEREIN) OR ON A PRE-VALIDATED BALLOT) MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT (AS DEFINED BELOW) ON OR BEFORE FEBRUARY 6, 2017 AT 5:00 P.M. (EASTERN STANDARD TIME) (THE "<u>VOTING DEADLINE</u>").

BALLOTS ARE ONLY BEING SOLICITED FROM <u>ELIGIBLE</u> HOLDERS OF CLASS 3 NOTES CLAIMS.  TO BE AN ELIGIBLE HOLDER, A NOTEHOLDER MUST BE, AS OF JANUARY 5, 2017 (I) AN ACCREDITED INVESTOR AS DEFINED IN RULE 501 OF REGULATION D UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "<u>SECURITIES ACT</u>") AND CERTIFY TO THAT EFFECT, OR WHO THE DEBTOR REASONABLY BELIEVES IS AN ACCREDITED INVESTOR, AND (II) A BENEFICIAL OWNER OF A NOTES CLAIM.  THE DEFINITION OF "ACCREDITED INVESTOR" IS ATTACHED HERETO AS EXHIBIT 1.  IF YOU ARE A HOLDER OF CLASS 3 NOTES CLAIMS AND YOU ARE NOT AN <u>ELIGIBLE</u> NOTEHOLDER, YOUR VOTE WILL NOT BE COUNTED.

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Prepackaged Plan of Reorganization of Homer City Generation, L.P.* (as amended, modified, or supplemented from time to time, the "**Plan**")[1] in connection with the case (the "**Chapter 11 Case**") to be commenced by the Debtor under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Plan is being proposed by Homer City Generation, L.P. (the "**Debtor**" or "**Homer City**").[2]

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

[2] The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of January 5, 2017, a beneficial holder (a "**Beneficial Holder**") of a Claim against the Debtor arising under or relating to that certain Indenture, dated as of December 14, 2012, between Homer City, as Issuer, and The Bank of New York Mellon, as trustee and collateral agent, pursuant to which Homer City issued certain 8.137% Senior Secured Notes due 2019 and 8.734% Senior Secured Notes due 2026 (the "**Notes Claims**" and the holders of such Notes Claims, the "**Noteholders**") and you are an Eligible Holder of such Notes Claims.

The Plan is attached as **Exhibit A** to the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.* (as amended, modified or supplemented from time to time, the "**Disclosure Statement**"), which accompanies this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtor's solicitation and voting agent, Epiq Bankruptcy Solutions, LLC (the "**Voting Agent**"), by calling +1 (646) 282-2500 or (866) 734-9393 (toll free), or sending an electronic mail message to tabulation@epiqsystems.com with "Homer" in the subject line and requesting that a copy be provided to you.  You should review the Disclosure Statement and the Plan in their entirety before you vote.  You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 3**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 Case is commenced, the Plan is confirmed, and the Effective Date occurs, holders of Allowed Notes Claims will receive their Pro Rata share of share of one hundred percent (100%) of the NewCo Interests, plus their Pro Rata share of the GE Remainder; provided, that, GE, on account of the GE Notes Claims, shall receive 66.67% of its Pro Rata share of the NewCo Interests and no share of the GE Remainder.

---

After the Debtor commences its Chapter 11 Case, the Plan can be confirmed by United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and thereby made binding on you if: (i) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot as directed by the broker, dealer, commercial bank, trust company, or other agent designated as your nominee (the "**Nominee**") so that the Master Ballot cast on your behalf (or the Beneficial Holder Ballot that has otherwise been validated by the Nominee) is received by the Voting Agent by the Voting Deadline.

The Debtor intends to file its Chapter 11 Case before the Voting Deadline.  Your receipt of this Ballot does not signify that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 Notes Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

2

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ALL RELEVANT ITEMS BELOW.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such a Beneficial Holder) of Notes Claims in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest.  If your Notes Claims are held by a Nominee on your behalf and you do not know the principal amount of the Claims held, please contact your Nominee immediately to obtain the amount.

- Amount of Notes Claims:

$

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, and 10.7 of the Plan and attached hereto as <u>Exhibit 2</u>.**

**If you (i) do not vote either to accept or reject the Plan (abstain), or (ii) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.6(b) of the Plan and attached hereto as <u>Exhibit 2</u>.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

The undersigned Beneficial Holder of Class 3 Notes Claims votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Release Election**.  If you voted to reject the Plan in Item 2 above ***or*** you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.6(b) of the Plan.  **Election to withhold consent is at your option.**  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.  If you (i) submit a rejecting Ballot without this box checked, or (ii) do not vote either to accept or reject the Plan (abstain), and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.

RLF1 16044937v.3

☐     The undersigned has voted to reject the Plan in Item 2 or is abstaining from voting to accept or reject the Plan <u>and</u> elects **<u>not</u>** to grant the releases contained in Section 10.6(b) of the Plan.

**Item 4.   Certification as to Class 3 Notes Claims Held in Additional Accounts**.  The undersigned hereby certifies that either (i) it has not submitted any other Ballots for other Class 3 Notes Claims held in other accounts or other record names, or (ii) if it has submitted Ballots for other Notes Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan. If the undersigned has submitted Ballots for other such Notes Claims then the undersigned certifies the accuracy of the information provided below as to such other Claims.

| Account Number | Name of Beneficial Holder (or name of Nominee if Notes Claims are held through a Nominee) | Amount of Other Class 3 Notes Claims Voted | CUSIP Number of other Class 3 Notes Claims Voted |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

RLF1 16044937v.3

**Item 5.  Acknowledgments**. By signing this Ballot, the Beneficial Holder (or authorized signatory of such Beneficial Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is entitled to vote on behalf of such Beneficial Holder) of the Notes Claims described in Item 1 as of the Voting Record Date, and if it has submitted any other Ballots for other Notes Claims held in other accounts or other record names that it has provided the information requested above in Item 4, (iii) it is an "accredited investor" within the meaning of Rule 501(a) under Regulation D of the Securities Act of 1933, as amended, (iv) if delivered to a Nominee, such Beneficial Holder authorizes its Nominee to treat this Ballot as a direction to include its claim as a Class 3 Notes Claim on the Master Ballot, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.

_____

Name of Beneficial Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2017 AT 5:00 P.M. (EASTERN STANDARD TIME).**

*IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE VOTING AGENT (EPIQ BANKRUPTCY SOLUTIONS, LLC)*, **PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.**

*IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE*, **PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE.**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING +1 (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HOMER" IN THE SUBJECT LINE.  BALLOTS AND MASTER BALLOTS MAY NOT BE SUBMITTED VIA ELECTRONIC MAIL.

VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot in the envelope provided, or as indicated by your Nominee.  Any Ballot that is illegible, contains insufficient information to identify the Beneficial Holder, does not contain an original signature, or is unsigned will not be counted.

        Please return the Ballot in the envelope provided, or as otherwise directed by your Nominee.  **The Voting Agent will tabulate all properly completed Ballots and Master Ballots received on or before the Voting Deadline.  IF YOU ARE RETURNING YOUR BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE OR OTHERWISE ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**  Ballots and Master Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.

2.      The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you and the Beneficial Holders if (i) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (ii) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3.      If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted.

4.      You must vote all your Claims or Interests within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

5.      If you voted to reject the Plan, or abstain from voting to accept or reject the Plan, and elect not to grant the releases contained in Section 10.6(b) of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.

6.      If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Section 10.6(b) of the Plan to the fullest extent permitted by applicable law.

7.      The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or Interest or an assertion or admission of Claims or Interests.

8.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

9.      If you cast more than one Ballot voting the same Claims or Interests prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

10.     In the event that (i) the Debtor revokes or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtor will not resolicit votes for acceptance or rejection of the Plan.

12.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTOR, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13.     PLEASE RETURN YOUR BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED BY YOUR NOMINEE.

14.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT +1 (646) 282-2500 OR (866) 734-9393 (TOLL FREE) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO TABULATION@EPIQSYSTEMS.COM WITH "HOMER" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

15.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS FEBRUARY 6, 2017 AT 5:00 P.M. (EASTERN STANDARD TIME).**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE VOTING AGENT (EPIQ BANKRUPTCY SOLUTIONS, LLC),* PLEASE COMPLETE, AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE*, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE.**

**<u>EXHIBIT 1</u>**

**Accredited Investor**

## "Accredited Investor"

Rule 501(a) under Regulation D of the Securities Act of 1933 (the "Act"), in relevant part, states that an "accredited investor" shall mean any person who comes within any of the below listed categories, or who the Debtor reasonably believes comes within any of the below listed categories, at the time of the sale of the securities to that person.

(1) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(a)(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his vote exceeds $1,000,000, subject to the calculation of such net worth as set forth in such Rule;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose vote is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of the Securities Act; and

(8) Any entity in which all of the equity owners are accredited investors.

**EXHIBIT 2**

**Plan Injunction, Releases, and Exculpation**

## Plan Injunction, Releases, and Exculpation

The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## Selected Defined Terms

**"Consenting Noteholders"** means the Noteholders (other than GE) that are party to the Restructuring Support Agreement, together with their permitted successors and assigns, and any subsequent Noteholder that becomes party to the Restructuring Support Agreement in accordance with the terms of the Restructuring Support Agreement.

**"Disbursing Agent"** means any Entity (including the Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI the Plan.

**"Exculpated Parties"** means collectively: (a) the Debtor; (b) the Reorganized Debtor; (c) the Disbursing Agent; (d) any statutory committee appointed in the Chapter 11 Case; (e) each Entity that has been or is a party to the Restructuring Support Agreement; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

**"Exit Agents"** means, collectively, the Exit Administrative Agent, the Exit Collateral Agent (as defined in the Plan) and the Exit Depositary Bank (as defined in the Plan).

**"Exit Administrative Agent"** means an administrative agent under the Exit Facility Credit Agreement (as defined in the Plan) acceptable to the Debtor or the Reorganized Debtor, as applicable, and the Requisite Noteholders.

**"GE"** means General Electric Company and any Affiliates thereof, other than the Debtor.

**"MetLife"** means Metropolitan Life Insurance Company, a New York corporation.

**"Prepetition Trustee"** means The Bank of New York Mellon, as trustee and collateral agent under the Indenture.

**"Released Parties"** means collectively: (a) the Debtor; (b) the Reorganized Debtor; (c) each person or Entity that has been or is a party to the Restructuring Support Agreement; *provided that* any such party shall only be a Released Party if it has not objected to confirmation of the Plan (any objection by GE to cure amounts in connection with the assumption of a GE Ordinary Course Contract shall not be deemed an objection to confirmation for purpose of the definition of "Released Parties"); (d) the Prepetition Trustee; (e) the Disbursing Agent; (f) MetLife; (g) each Noteholder that votes for, and does not object to, the Plan; (h) the Exit Arranger; (i) the Exit Lenders; (j) each of the Exit Agents; and (k) with respect to each of the foregoing Entities in clauses (a) through (j), such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

**"Reorganized Homer City or Reorganized Debtor"** means the Debtor as reorganized on the Effective Date in accordance with the Plan.

## Section 10.3 of the Plan: Discharge of Claims and Termination of Interests

Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any Affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date.  Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor.

## Section 10.4 of the Plan: Term of Injunctions or Stays

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case, including under section 105 or 362 of the Bankruptcy Code or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

## Section 10.5 of the Plan: Injunction

(a)     Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, shareholders, managers, members, partners, and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(b)     Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or Interests in the Debtor (regardless of whether proof of such Claims or Interests has been filed) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, shareholders, managers, members, partners, and Affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)     By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.5 of the Plan.

(d)     The injunctions in Section 10.5 of the Plan shall extend to any successors of the Debtor and the Reorganized Debtor and their respective property and interests in property.

RLF1 16044937v.3

## Section 10.6(a) of the Plan: Releases by the Debtor

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents or an assumed contract that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, the Estate or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement), the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Definitive Documents, the Exit Facility Engagement Letter, the NewCo Agreements, the Amended Organizational Documents, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, and upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided, that*, nothing in Section 10.6(a) of the Plan shall be construed to release the Released Parties from (a) intentional fraud or criminal conduct as determined by a Final Order or (b) any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Exit Facility Documents, the NewCo Agreements, and the Plan Supplement) executed by such party to implement the Plan.

## Section 10.6(b) of the Plan: Releases by Holders of Claims or Interests

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Debtor, Reorganized Debtor, and Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by:

    i.       each other Released Party;

    ii.      each holder of an Impaired Claim or Interest that is not a Released Party, except any such holder that voted to reject, or abstained from voting on, the Plan <u>and</u> also checked the box on the applicable ballot or notice indicating that they opt out of granting the releases provided in the Plan;

    iii.    each holder of an Unimpaired Claim that does not timely object to the releases provided for in the Plan; and

    iv.    with respect to any Entity in the foregoing clauses (i)-(iii), such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, current or

former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entity's respective heirs, executors, estates, servants and nominees;

in each case, from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, purchase, sale or rescission or the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party (except for future or continuing performance obligations in connection with such business or contractual arrangement), the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Definitive Documents, the Exit Facility Engagement Letter, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, and upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, *that*, nothing in Section 10.6(b) of the Plan shall be construed to release the Released Parties from (a) intentional fraud or criminal conduct as determined by a Final Order or (b) any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Exit Facility Documents, the NewCo Agreements, and the Plan Supplement) executed by such party to implement the Plan.

### Section 10.7 of the Plan: Exculpation

Notwithstanding anything in the Plan to the contrary, and to the maximum extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any holder of a Claim or Interest or any other party in interest in the Chapter 11 Case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect Affiliates, or any of their successors or assigns, for any act or omission (both before and after the Commencement Date) in connection with, related to, or arising out of, the Chapter 11 Case, the Restructuring Support Agreement, the Plan (including, without limitation, the Plan Supplement), the Definitive Documents, the Indenture, any settlement or agreement in the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan and the Definitive Documents, the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan, whether such distribution occurs after the Effective Date, the administration of the Plan or property to be distributed hereunder, or agreements, instruments, other documents, or negotiations regarding or concerning any of the foregoing; *provided*, *that*, nothing in Section 10.7 of the Plan shall be construed to exculpate the Exculpated Parties from intentional fraud or criminal conduct as determined by a Final Order. The Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.