UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------x
                                                  :

In re                                          :             Chapter 11
                                          :

HOMER CITY                     :             Case No. 17-10086 (MFW)
GENERATION, L.P.          :
                                          :

        Debtor.[1]               :
---------------------------------------------------------x

**DEBTOR'S MOTION FOR ORDER AUTHORIZING (A) ASSUMPTION OF ENGAGEMENT LETTER BETWEEN THE DEBTOR AND MORGAN STANLEY SENIOR FUNDING, INC., AS LEAD ARRANGER FOR EXIT OR OTHER FINANCING, (B) PAYMENT OF RELATED FEES AND EXPENSES AND (C) INDEMNIFICATION OF MORGAN STANLEY SENIOR FUNDING, INC.**

        Homer City Generation, L.P., the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby files this motion (the "**Motion**") and respectfully states as follows:

**Background**

        1.        On the date hereof (the "**Commencement Date**"), the Debtor commenced with this Court a voluntary chapter 11 case.  The Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

        2.        Before the Commencement Date, the Debtor began the solicitation of votes on the *Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.* (the "**Plan**") through the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of Homer City Generation, L.P.* (the "**Disclosure Statement**") pursuant to

---

[1] The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

RLF1 16586674v.1

sections 1125 and 1126(b) of the Bankruptcy Code. The Debtor expects that the Plan will be accepted in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

3. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration of John R. Boken in Support of the Debtor's Chapter 11 Petition and First Day Relief*, sworn to on the date hereof (the "**Boken Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## Jurisdiction and Venue

4. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**The Engagement Letter**

6. The Debtor executed an engagement letter (the "**Engagement Letter**") with Morgan Stanley Senior Funding, Inc. ("**Morgan Stanley**") on December 13, 2016.[2] Pursuant to the Engagement Letter, Morgan Stanley has agreed to act as the sole lead arranger, sole bookrunner and/or lender, as applicable, of any secured or unsecured, senior, subordinated or mezzanine, loan or credit facility (including but not limited to letters of credit or any debtor-in-possession financing that is by its terms convertible into exit financing) for the Debtor and/or any of its subsidiaries or affiliates in connection with any bankruptcy-related debt financing of the Debtor and/or the Homer City Generating Station, other than a "Qualified DIP Financing"[3] (the "**Exit Facility**"). Engagement Letter § 1. Following emergence from chapter 11, the Debtor plans to utilize the funds available under the Exit Facility to (i) fund distributions, costs, and expenses contemplated by the Plan, (ii) provide letters of credit or other credit support to replace GE guarantees of certain Homer City obligations as required under the Plan and the RSA, and (iii) fund general working capital and for general corporate purposes of the Debtor.

7. As an inducement to Morgan Stanley to enter into the Engagement Letter, the Debtor agreed to pay certain fees in connection with the Exit Facility. A general description of those fees follows:

  a. Structuring Fee: A non-refundable fee (the "**Structuring Fee**") in the amount equal to the greater of ███████████

---

[2] Contemporaneously herewith, the Debtor is filing a separate motion to seal an unredacted copy of this Motion and of the Engagement Letter (the "**Seal Motion**"). A redacted version of the Engagement Letter is attached hereto as **Exhibit B**. The redactions in the Engagement Letter and this filed version of the Motion redact descriptions of certain fees and expenses payable pursuant to the Engagement Letter. The summary of the Engagement Letter set forth herein is qualified in its entirety by the specific terms of the Engagement Letter.

[3] "**Qualified DIP Financing**" means "a debtor-in-possession financing that (a) is to be repaid, refinanced or otherwise satisfied prior to, upon or in connection with the consummation of a Chapter 11 plan of reorganization for the [Debtor] and (b) is provided by (x) one or more members of the ad hoc committee of bondholders of the [Debtor] listed on Schedule I [to the Engagement Letter] and/or their respective affiliates . . . and/or (y) GE Capital US Holdings, Inc. . . . and/or its majority-owned subsidiaries . . . ." Engagement Letter § 1.

███████████████████████████████████[4] *Id.* § 4. The Structuring Fee shall be earned, due and payable at the Closing Date. *Id.*

    b. <u>Alternate Transaction Fee</u>: If, at any time during the term of or within twelve (12) months following the date of entry of an order granting this Motion, the Debtor or any of its affiliates decide to pursue any Engagement Transaction(s) other than with Morgan Stanley acting in the same capacities and on the terms set forth in the Engagement Letter for such Engagement Transaction(s), then upon consummation thereof, the Debtor shall pay, or cause to be paid, to Morgan Stanley a fully earned and non-refundable fee (the "**Alternate Transaction Fee**") equal to the Structuring Fee that Morgan Stanley would otherwise have been entitled to receive had Morgan Stanley participated in such Engagement Transaction(s), otherwise payable in the same manner as the Fees set forth in Section 4 of the Engagement Letter. *Id.* § 7.

    c. <u>Work Fee</u>: If (x) the Engagement Transaction arranged or proposed to be arranged by Morgan Stanley is a Non-Conforming Transaction, and (y) an Engagement Transaction is consummated solely with one or more Designated Parties as lenders, then Morgan Stanley shall not be entitled to any Alternate Transaction Fee and shall instead be entitled to a work fee of ███████ (the "**Work Fee**" and, together with the Structuring Fee and the Alternate Transaction Fee, the "**Fees**"). *Id.* The Work Fee shall be earned, due and payable at the closing of the Designated Party Alternate Transaction. *Id.*

8.    As a further inducement to Morgan Stanley to provide the services described in the Engagement Letter, the Debtor has also agreed to pay directly or reimburse the reasonable and documented fees and out-of-pocket expenses incurred by Morgan Stanley in connection with arranging the Exit Facility (collectively, the "**Expenses**"). *Id.* § 4. As more fully set forth in the Engagement Letter, such expenses include, without limitation: (i) certain fees, disbursements and expenses of Morgan Stanley's outside counsel, professionals and advisors; (ii) any fees charged by securities rating agencies for rating the Engagement Transaction or the Borrower; (iii) the fees and expenses of the account bank, administrative, collateral, intercreditor and other similar agents or trustees, as well as accountants; (iv) the costs

---

[4] Capitalized terms not otherwise defined herein have the meanings set forth in the Engagement Letter.

of printing and distributing marketing documents; and (v) all reasonable and documented out-of-pocket travel and other related expenses of Morgan Stanley. *Id.*

9. As set forth more fully in the Engagement Letter, the Debtor has also agreed to indemnify and hold harmless (the "**Indemnification**") Morgan Stanley and its affiliates and its and its affiliates' officers, directors, employees, agents and each other person or entity, if any, controlling it or any of its affiliates (each an "**Indemnified Person**" and collectively the "**Indemnified Persons**") from and against any and all losses, claims, damages, liabilities and expenses, joint or several, to which any such Indemnified Person may become subject under applicable law or otherwise relating to, arising out of or in connection with the Engagement Letter or the carrying out of the engagement under the Engagement Letter, or any claim, litigation, investigation or proceedings relating to the foregoing regardless of whether any of such Indemnified Persons is a party thereto, and to reimburse each Indemnified Person for any documented reasonable legal or other expenses as they are incurred in connection with investigating, preparing, pursuing, responding to or defending any of the foregoing. *Id.* § 3, Annex A. The Indemnification does not apply to any losses, claims, damages, liabilities or expenses to the extent that they are finally judicially determined to have resulted directly from the gross negligence or willful misconduct of such Indemnified Person. Engagement Letter, Annex A.

10. The Debtor believes that the terms and conditions set forth in the Engagement Letter are comfortably within the range of "market" fees, protections and other terms typically received by other arrangers to credit facilities of similar nature, size and complexity and the entry into and assumption of the Engagement Letter reflect an exercise of the Debtor's sound business judgment.

**Relief Requested**

11. By this Motion, pursuant to sections 105(a), 363(b)(1), 365(a), 503(b) and 507(a)(2) of the Bankruptcy Code and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtor respectfully requests entry of an order (the "**Proposed Order**") substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtor to (i) assume the Engagement Letter pursuant to Bankruptcy Code sections 363(b)(1) and 365(a); (ii) pay the Structuring Fee, Alternate Transaction Fee or Work Fee, as applicable, and the Expenses pursuant to the terms and conditions of the Engagement Letter as administrative claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and (iii) provide, and pay as administrative claims under section 503(b) and 507(a)(2) of the Bankruptcy Code any obligations with respect to, the Indemnification of the Indemnified Persons pursuant to the terms and conditions of the Engagement Letter and Annex A thereto.

**Basis for Relief**

**A. A Sound Business Justification Exists for Assuming the Engagement Letter**

12. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In the Third Circuit, courts have authorized the use or sale of property of the estate outside of the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith. *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *see also In re Elpida Memory, Inc.*, Case No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside the ordinary course where such use "represents the sound exercise of business judgment"); *In re Montgomery Ward Holding Corp.*,

242 B.R. 147, 153 (D. Del. 1999) (stating that a debtor's use or sale of property of the estate may be authorized when the debtor shows "that a sound business purpose justifies such actions").

13. Once a debtor articulates a valid business justification under section 363(b) of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interests of the debtor's estate. *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008). Moreover, "where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 798 (D. Del. 2007) (explaining that courts will not entertain objections to actions taken by the debtor "provided that the conduct involves a business judgment made in good faith upon a reasonable basis and within the scope of authority under the Bankruptcy Code").

14. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may . . . assume any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The Third Circuit has adopted the business judgment standard in determining whether a debtor is justified in assuming or rejecting an executory contract. *See Nickels Midway Pier, LLC v. Wild Waves, LLC*, 341 B.R. 486, 493 (D.N.J. 2006) (citing *Sharon Steel v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 46, 40 (3d Cir. 1989)); *see also In re Distrib. Energy Sys. Corp.*, Case No. 08-11101

RLF1 16586674v.1

(KG), 2008 WL 4641350, at *2 (Bankr. D. Del. Oct. 17, 2008) (citing *Sharon Steel*, 872 F.2d at 40). The analysis considers whether a reasonable business person would make a similar decision under similar circumstances and whether assuming the contract is in the best interests of the bankruptcy estate. *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (applying business judgment rule to rejection of executory contract); *In re Mottola*, Case No. 97-19361 (DWS), 1997 WL 860674, at *2 (Bankr. E.D. Pa. Dec. 3, 1997); *see also In re Bellis*, Case No. 05-41366 (DHS), 2006 WL 2380997, at *8 (Bankr. D.N.J. Aug. 16, 2006). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank. N.A.*, 762 F.2d 1303, 1311 (5th Cir 1985).

15. Upon finding that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate, the Court should approve the assumption under section 365(a) of the Bankruptcy Code. *See, e.g.*, *In re Bankvest Capital Corp.*, 360 F.3d 291, 302 (1st Cir. 2004) ("If a debtor wants to assume a contract in its business judgment . . . the debtor should be allowed to do so."); *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136,138 (Bankr. N.D. Ill. 1990).

16. Additionally, section 105(a) of the Bankruptcy Codes provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to section 105(a), orders are appropriate where they are essential to the debtor's reorganization efforts and do not pose a burden on the debtor's creditors. *See U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prof. & Indem. Ass'n (In re U S*

*Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999); *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

17. The Debtor's assumption of the Engagement Letter is a sound exercise of its business judgment. In consultation with its advisors and other interested parties, the Debtor has concluded that the Exit Facility is necessary for the Debtor to exit chapter 11 with sufficient liquidity to fund its post-emergence operations. Indeed, obtaining exit financing is an integral step necessary to confirm the Debtor's Plan for the benefit of all stakeholders.

18. The Debtor engaged Morgan Stanley prepetition as lead arranger to assist the Debtor in obtaining an Exit Facility because of Morgan Stanley's diligence, expertise and its history of acquiring exit financing on market-competitive terms. The Debtor further believes that Morgan Stanley's knowledge of the Debtor's business and its expertise make Morgan Stanley the most adept arranger to secure an Exit Facility that maximizes value to the Debtor, its estate, creditors and all other parties in interest.

19. Moreover, given the work that has already been performed to date, in connection with locating and arranging for exit lenders to structure the Exit Facility, at this juncture, the Debtor has determined that it would be commercially impracticable to find another arranger to secure an Exit Facility within the timeframe allotted by the RSA.

20. Accordingly, the Debtor submits that the assumption of the Engagement Letter is a prudent exercise of its business judgment.

B.  **Payment of the Fees and Expenses and Indemnification Are Entitled to Administrative Expense Status Under Sections 503(b) and 507(a)(2) of the Bankruptcy Code**

21. The Debtor's obligations under the Engagement Letter are "actual and necessary costs and expenses of preserving the estate" entitled to administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code. *See* 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2). Absent the Debtor's commitment to pay the Fees and Expenses and to provide the Indemnification required under the Engagement Letter, the Debtor would not have been able to engage Morgan Stanley. Morgan Stanley's services, as set forth above, are essential to the Debtor's ability to timely secure the exit financing commitments contemplated by the Plan and, in turn, to confirm and consummate the Plan, which maximizes creditor recoveries. As a result, payment of the Fees and Expenses and the Indemnification provided for in the Engagement Letter will not only preserve, but will enhance, the value of the Debtor's estate.

22. The Structuring Fee is reasonable and properly designed to compensate Morgan Stanley for its undertaking to arrange the Exit Facility. The Structuring Fee is a customary and necessary predicate for inducing Morgan Stanley to agree to arrange a financing, particularly in light of the financial risks and opportunity costs associated with the undertaking. Absent a reasonable fee, such as the negotiated Structuring Fee here, the Debtor would likely be unable to induce an engagement from an alternative financial institution.

23. Similarly, payment of the Alternate Transaction or Work Fee is reasonable, appropriate and customary in financing transactions in similar chapter 11 cases. The Alternate Transaction Fee, payable if the Debtor pursues an Engagement Transaction with an entity other than Morgan Stanley, properly insulates Morgan Stanley from the risk that its arrangement efforts are freeridden and induces Morgan Stanley's entrance into the Engagement

Letter. The Work Fee, payable if Morgan Stanley secures a Non-Conforming Engagement Transaction, adequately and fairly compensates Morgan Stanley for its efforts under the circumstances in which the Exit Facility was acquired.

24. Finally, payment of the Expenses and providing Indemnification is customary and appropriate under the circumstances. Paying the Expenses will compensate Morgan Stanley for its actual costs incurred in connection with arranging the Exit Facility under the Engagement Letter.

25. The Indemnification provision also is standard and customary in the industry. It provides the Indemnified Persons with an appropriate level of protection for potential liability related solely to the engagement of Morgan Stanley to arrange the Exit Facility. The Debtor's agreement to pay the Expenses and provide the Indemnification are also the result of arm's-length negotiations between the Debtor and Morgan Stanley, and the Debtor believes that the terms thereof are fair and reasonable in light of the efforts that Morgan Stanley will undertake to pursue the consummation of the Exit Facility.

26. Payment of similar fees and expenses by debtors to exit facility arrangers has been previously approved in this and other districts. *See, e.g.*, *In re Relativity Fashion, LLC, et. al.*, Case No. 15-11989 (MEW) (Bankr. S.D.N.Y. Dec. 5, 2015); *In re Lightsquared Inc., et. al.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. May 31, 2013); *In re CCS Med. Holdings, Inc., et. al.*, Case No. 09-12390 (CSS) (Bankr. D. Del. Aug. 21, 2009); *In re Buffet Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 4, 2009)

27. Because the Fees and Expenses and Indemnification provided in the Engagement Letter were necessary to induce Morgan Stanley to enter into the Engagement Letter and Morgan Stanley's services are essential to the Debtor's ability to consummate the

Plan, the Debtor respectfully submits that the Fees and Expenses and Indemnification are entitled to administrative expense status under section 503(b) and 507(a)(2) of the Bankruptcy Code.

### Waiver of Bankruptcy Rules 6003(b) and (c) and 6004(a) and (h)

28.     To implement the foregoing successfully, the Debtor seeks a waiver of the proscriptions under Bankruptcy Rule 6003(b) and (c), the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Morgan Stanley, working in good faith with the Debtor, has already spent time and incurred expenses seeking lenders for an Exit Facility, and will incur additional expenses in the coming weeks as it arranges the Exit Facility and finalizes documentation within the eighty-day timeframe imposed by the RSA.  To minimize the risk of non-payment with respect to the Fees and Expenses incurred by Morgan Stanley with respect to its ongoing efforts to arrange the Exit Facility within that timeframe, the Engagement Letter requires entry of an Approval Order within fourteen calendar days of the Commencement Date. Accordingly, ample cause exists to justify the waiver of the proscriptions, notice requirements and stay under Bankruptcy Rules 6003(b) and (c) and 6004(a) and (h), to the extent such proscriptions, notice requirements and stay apply.

### Notice

28.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's thirty (30) largest unsecured creditors on a consolidated basis, (iii) counsel to the Consenting Noteholders, (a) O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: George Davis, Esq., Andrew Parlen, Esq., and Joseph Zujkowski, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Sean Beach, Esq.) (iv) counsel to the Collateral Agent, Emmet, Marvin & Martin, LLP (Attn: Thomas

A. Pitta, Esq.), (v) counsel to GE (a) Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq. and Sunny Singh, Esq.) and (b) Reed Smith LLP, 1201 N. Market Street, Suite 1500, Wilmington, DE 19801 (Attn: Kurt Gwynne, Esq.), (vi) the Securities and Exchange Commission, (vii) the Internal Revenue Service, (viii) the United States Attorney's Office for the District of Delaware, (ix) the Debtor's banks and financial institutions, and (x) all parties who filed a request for service of notice under Bankruptcy Rule 2002 (the "**Notice Parties**").

29. The Debtor respectfully submits that no further notice is required. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated:  January 11, 2017<br>Wilmington, Delaware | */s/ Mark D. Collins*<br>RICHARDS, LAYTON & FINGER, P.A.<br>Mark D. Collins (No. 2981)<br>Russell C. Silberglied (No. 3462)<br>Paul N. Heath (No. 3704)<br>Joseph C. Barsalona II (No. 6102)<br>Andrew M. Dean (No. 6147)<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone:  (302) 651-7700<br>Facsimile:   (302) 651-7701<br>Email:         collins@rlf.com<br>                    silberglied@rlf.com<br>                    heath@rlf.com<br>                    barsalona@rlf.com<br>                    dean@rlf.com<br><br>*Proposed Attorneys for the Debtor and Debtor in Possession* |