**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**



```
-------------------------------------------------- X
                                                   :   Chapter 11
In re:                                             :
                                                   :   Case No. 17-10086 (MFW)
HOMER CITY GENERATION L.P.,                        :
                                                   :
                  Debtor¹.                         :
                                                   :   Re: Docket No. 16
                                                   :
-------------------------------------------------- X
```

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 503, 507(b),
AND 552, FED. R. BANKR. P. 2002, 4001(b), 6004(h), AND 9014 AND DEL.
BANKR. L.R. 4001-2 (I) AUTHORIZING THE DEBTOR TO USE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES, (III) SCHEDULING A FINAL HEARING PURSUANT
TO FED. R. BANKR. P. 4001(b) AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**"),[2] of Homer City Generation L.P. ("**Homer
City**") as a debtor and debtor-in-possession (the "**Debtor**") in the above captioned case (the
"**Case**") for interim and final orders under sections 105, 361, 362, 363, 503, 507 and 552 of title
11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"),
Rules 2002, 4001(b), 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (as
amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules for the United States
Bankruptcy Court for the District of Delaware (as amended, the "**Local Bankruptcy Rules**")
seeking:

(a)    authorization for the Debtor to (i) use the Cash Collateral (as defined in
paragraph 5(b) below) and all other Collateral (as defined in paragraph
4(e) below) pursuant to section 363 of the Bankruptcy Code, and

---

¹ The last four digits of the Debtor's federal tax identification number are 3693.  The location of the Debtor's
principal place of business is 1750 Power Plant Road, Homer City, Pennsylvania 15748.

² Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

(ii) provide adequate protection to the Prepetition Secured Parties (as defined in paragraph 4(e) below) on the terms set forth in this order (the **"Interim Order"**);

(b) granting the Collateral Agent relief from the automatic stay to exercise remedies under the Existing Agreements (each as defined in paragraph 4(d) below) upon the occurrence and during the continuance of a Termination Event (as defined in paragraph 8 below), subject to the terms set forth in this Interim Order;

(c) subject to entry of the Final Order, the waiver by the Debtor of any right to seek to surcharge against the Collateral pursuant to sections 105(a) and 506(c) of the Bankruptcy Code or any other applicable principle of law or equity or any "equities of the case" claims under section 552(b) of the Bankruptcy Code;

(d) to schedule, pursuant to Bankruptcy Rule 4001(b), an interim hearing (the **"Interim Hearing"**) on the Motion to be held before the Court to consider entry of this Interim Order; and

(e) to schedule, pursuant to Bankruptcy Rule 4001(b), a final hearing (the **"Final Hearing"**) for the Court to consider entry of a final order (the **"Final Order"**) approving the relief granted herein on a final basis;

and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice of the Interim Hearing need be provided; and the Court having reviewed the Motion; and the Interim Hearing having been held by this Court; and the Court having determined that the interim relief requested in the Motion is

(i) in the best interests of the Debtor, its creditors, and its estate and all other parties-in-interest in this Case; (ii) the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm; and (iii) the legal and factual bases set forth in the Motion establish just case for the interim relief granted; and upon the record made by the Debtor in the Motion, the First Day Declaration, and at the Interim Hearing and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction.*  This Court has core jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice.*  Notice of the Motion was served by the Debtor on the following parties (or their counsel):  (i) the Collateral Agent; (ii) counsel to the Ad Hoc Group; (iii) the GE Parties (as defined below); (iv) the Office of the United States Trustee for the District of Delaware; (v) the holders of the thirty (30) largest unsecured claims against the Debtor's estate; and (vi) all other parties entitled to notice, pursuant to Bankruptcy Rules 2002 and 4001(b) and Local Rule 4001-2(c).

3.    *Approval of Motion.*  The interim relief requested in the Motion is granted as described herein.  Any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved, or settled, is hereby denied and overruled on the merits.

4.    *Debtor's Stipulations.*  Subject to paragraph 18 below, the Debtor acknowledges, admits, stipulates, and agrees that:

(a)    Prior to the Commencement Date, Homer City entered into that certain indenture, dated as of December 14, 2012 (as amended, modified, restated and/or

supplemented from time to time, the "**Indenture**"), by and among Homer City and Bank of New York Mellon, as trustee and collateral agent (the "**Collateral Agent**"), pursuant to which Homer City issued the 8.137% Senior Secured Notes due 2019 (the "**2019 Notes**") and 8.734% Senior Secured Notes due 2026 (the "**2026 Notes**", together with the 2019 Notes, collectively, the "**Notes**"). The Indenture was executed in accordance with *the Plan of Reorganization of Homer City Funding LLC Pursuant to Chapter 11 of the Bankruptcy Code*, which was confirmed by the United States Bankruptcy Court for the District of Delaware in *In re Homer City Funding LLC*, Case No. 12-13024, on December 6, 2012 and became effective on December 14, 2012.

(b)     As of the Commencement Date, Homer City was indebted and liable in respect of the Notes to the holders of the Notes (collectively, the "**Senior Noteholders**") without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $606,912,777.53, plus accrued and unpaid interest thereon and, to the extent payable, prepayment premium and make-whole amounts, and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, to the extent that they are chargeable or reimbursable under the Indenture), charges, indemnities and other obligations incurred in connection therewith as provided in the Indenture (collectively, the "**Prepetition Indebtedness**").

(c)     The Prepetition Indebtedness, including the amounts specified in paragraph 4(b), constitutes the legal, valid, and binding obligations of the Debtor, enforceable in accordance with its terms, without objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Indebtedness. The Debtor does not have (and shall not assert) any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Indebtedness.

The Prepetition Indebtedness and any amounts previously paid to any Prepetition Secured Party pursuant to the terms of the Indenture on account thereof or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(d)    To secure the Prepetition Indebtedness under the Indenture, the Debtor (or its affiliates) entered into the following prepetition collateral documents (the "**Collateral Documents**", and together with the Indenture, the "**Existing Agreements**"):

i.    that certain Security Agreement, dated as December 14, 2012, by and among Homer City and the Bank of New York Mellon as Collateral Agent (the "**Security Agreement**"); and

ii.    that certain Security Agreement, dated as December 14, 2012, by and among EFS Homer City, LLC and the Bank of New York Mellon as Collateral Agent;

iii.    that certain Open-End Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, dated December 12, 2012, by and among Homer City and Bank of New York Mellon as Collateral Agent and Mortgagee; and

iv.    any other agreements defined as "Security Documents" in the Indenture including, but not limited to, control agreements (as contemplated by section 4.9 of the Security Agreement).

(e)    Pursuant to the Collateral Documents, the Debtor as party thereto granted security interests in, and continuing liens on, certain assets of the Debtor (the "**Collateral**") to and/or for the benefit of the Collateral Agent or the Senior Noteholders (collectively, the "**Prepetition Secured Parties**" and each, a "**Prepetition Secured Party**")

under the Collateral Documents (such liens, the "**Prepetition Liens**"). For the avoidance of

doubt, the Collateral includes the Cash Collateral (as defined in paragraph 5(b) below) and the

assets of the Debtor in or upon which a lien or other security interest has been granted in favor or

for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the

applicable Existing Agreements that existed as of the Commencement Date and postpetition

proceeds, products, offspring, rents, and profits.

(f)     The Collateral Documents are valid and binding agreements and

obligations of the Debtor, and the Prepetition Liens constitute valid, binding, enforceable, and

perfected security interests and "Liens", as that term is defined in the Existing Agreements

("**Liens**"), and such Claims and Liens are not subject to avoidance, recharacterization, reduction,

disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy

law, except as provided in the Existing Agreements or this Interim Order.

(g)     The Collateral Agent has properly perfected its security interests

and Liens in and on the Collateral by taking possession of, or obtaining control over, certain

assets and/or by the filing of UCC-1 financing statements, mortgages, and other required

documents against the Debtor and such Collateral with the proper state and county offices for the

perfection of such security interests and Liens.

(h)     The Debtor, on its own behalf and on behalf of its past, present,

and future predecessors, successors, heirs, subsidiaries, and assigns (collectively, the

"**Releasors**"), to the maximum extent permitted by applicable law, unconditionally, irrevocably

and fully and forever releases, acquits, relinquishes, waives, and discharges each of the

Prepetition Secured Parties (in their capacities as such), and each of their respective former,

current, or future subsidiaries, officers, directors, managers, principals, employees, agents,

financial advisors, attorneys, accountants, affiliates, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, or judgments of every type, whether known or unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof with respect to the Prepetition Indebtedness, Collateral, the Existing Agreements, or the transactions contemplated under such documents, including, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the Prepetition Liens. The Debtor's acknowledgements, stipulations, and releases shall be binding on the Debtor and its respective representatives, successors, and assigns and, subject to any action timely commenced by the official committee of unsecured creditors (the "**Committee**") appointed in the Case, if any, or any other party-in-interest prior to the Investigation Termination Date (as defined in paragraph 18 below), on the Debtor's estate, and all creditors thereof and each of their respective representatives, successors and assigns, including any trustee or representative appointed in the Case.

    5.    *Findings Regarding the Use of Cash Collateral and the Collateral.*

        (a)    Good cause has been shown for the entry of this Interim Order.

(b)      The Debtor has an immediate and critical need to use the Collateral (including cash that is property of the Debtor and that constitutes "cash collateral" as defined by section 363(a) of the Bankruptcy Code, including any and all proceeds of any Collateral that is property of the Debtor ("**Cash Collateral**") on the terms set forth herein (including compliance with the Budget (as defined in paragraph 6(a) below)), in order to, among other things, permit the orderly continuation of its business and preserve its going concern value.

(c)      The terms of the use of the Collateral, including the Cash Collateral, pursuant to this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(d)      This Interim Order and the terms of the use of the Collateral, including the Cash Collateral, have been negotiated extensively, in good faith, and at arm's length between the Debtor, the Collateral Agent, an ad hoc group consisting of holders of more than two-thirds of the outstanding principal amount of the Notes (the "**Ad Hoc Group**"), and the GE Parties.

(e)      The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  Unless the interim relief set forth in this Interim Order is granted immediately, the Debtor's estate and business will be immediately and irreparably harmed.  In particular, the Debtor requires immediate use of the Collateral, including the Cash Collateral, to, among other things, permit the orderly continuation of its business and preserve going concern value for the benefit of stakeholders.  The use of the Collateral, including the Cash Collateral, in accordance with this Interim Order is therefore in the best interest of the Debtor's estate.

6.    *Authorization to Use Cash Collateral.*

(a)    Subject to the terms, conditions, and limitations set forth in this Interim Order, the Debtor is hereby authorized to use Cash Collateral pursuant to the 13-week budget setting forth projected receipts and disbursements, on a cash basis, for the period beginning on the Commencement Date, a copy of which is attached hereto as <u>Exhibit A</u> (the "**Budget**"). The Debtor shall adhere to the Budget during the Case (subject to the Permitted Variance (as defined in paragraph 6(d) below)). The first testing date shall be the Friday of the third full week following the Commencement Date (the "**First Testing Date**," and each testing date thereafter, a "**Testing Date**"); *provided that* a Termination Event may occur anytime on or after the Commencement Date if the Debtor fails to satisfy the covenant set forth in paragraph 8(d) of this Interim Order. Compliance with the Budget shall be tested every Friday on a four-week trailing basis commencing the first Friday after the First Testing Date (each such four week period, the "**Budget Period**"); *provided that* where less than four weeks have elapsed between the Commencement Date and the Testing Date, the Budget will be tested on a trailing basis back to the Commencement Date. The Variance Report (as defined in paragraph 14(e)(iv) below) reflecting the results of each such compliance test shall be provided on or before the Friday following the end of each Budget Period pursuant to paragraph 14(e) below. For the avoidance of doubt, under no circumstances shall professional fees be tested as part of this Budget covenant. During the period from the Commencement Date through and including the Termination Date, the Debtor shall be authorized to use Cash Collateral to satisfy the professional fee payments required to be made pursuant to paragraph 14(d) below.

(b)    The Prepetition Secured Parties shall have no obligation with respect to the Debtor's use of the Cash Collateral, and shall not be obligated to ensure or monitor

the Debtor's compliance with the Budget or to pay (directly or indirectly from the Cash Collateral) any expenses incurred or authorized to be incurred pursuant to the Budget. The Prepetition Secured Parties' consent to the Budget shall not be construed as consent to the use of any Cash Collateral after the Termination Date, regardless of whether the aggregate funds shown on the Budget have been expended.

(c)     On each Friday the Debtor shall provide a 13-week cash forecast beginning on the following Monday with supporting detail and documentation in form and detail reasonably satisfactory to the Collateral Agent and Required Noteholders. Every four weeks, upon the acceptance by the Required Noteholders, the updated 13-week cash forecast shall become the Budget for such period for purposes of this Interim Order (each, a "**Supplemental Budget**").

(d)     Notwithstanding the Budget, so long as no Termination Event has occurred, the Debtor shall be authorized to use Cash Collateral in accordance with the Budget and this Interim Order in an amount that would not cause Net Operating Cash Flow (as defined in the Budget) to be less than 85% of the projected Net Operating Cash Flow according to the Budget for any Budget Period (a "**Permitted Variance**").

7.     *Carve-Out*.  For purposes hereof, the "**Carve-Out**" shall mean (a) any fees payable to the Clerk of the Court and to the Office of the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, (b) allowed, accrued and unpaid fees and out-of-pocket expenses of each professional retained by order of the Court (regardless of when such fees and expenses become allowed by order of the Court, including after a Carve-Out Event (as defined in this paragraph 7) incurred on or prior to the occurrence of a Carve-Out Event in aggregate accrued amounts for each such professional not in excess of the amounts set forth in

the Budget for the relevant professional through the date of such Carve-Out Event, (c) up to $350,000 of allowed and unpaid fees and expenses of all professionals retained by the Debtor and approved by the Court incurred after the occurrence of a Carve-Out Event (the "**Post-Carve Out Notice Cap**"), and (d) any and all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $25,000.  For the purposes hereof, a "**Carve-Out Event**" shall occur upon the occurrence and during the continuance of a Termination Event and upon delivery of a written notice thereof to the Debtor, the Debtor's counsel (Richards, Layton & Finger, P.A.), the U.S. Trustee, and counsel to any Committee stating that the Termination Date has occurred and that the Debtor's ability to pay professionals is now subject to the Carve-Out (a "**Carve-Out Notice**").  Upon the delivery of a Carve-Out Notice, the Debtor shall provide immediate notice by email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtor's ability to pay professionals is subject to the Carve-Out; *provided that* nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtor's estate.  A waiver of a Termination Date triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtor to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Court, as the same may be due and payable, without reducing the Carve-Out.  Upon delivery of the Carve-Out Notice, the Debtor shall establish a segregated reserve account in an amount (the "**Carve-Out Reserve**") equal to the sum of (i) all billed and unpaid fees, disbursements, costs, and expenses of all retained professionals (including any outstanding holdbacks, but not in excess of the amount set forth in the Budget for the relevant professional); (ii) all unbilled fees, disbursements, costs, and expenses of all retained

professionals incurred prior to the delivery of the Carve-Out Notice, but not in excess of the amount set forth in the Budget for the relevant professional, and (iii) the Post Carve-Out Notice Cap.  The Debtor shall not commingle any funds contained in the Carve-Out Account and shall use such funds to pay only the retained professionals' fees, as and when allowed by order of the Court.  To the extent the Court does not approve any of the fees, disbursements, costs, and expenses of a retained professional that were segregated as a part of the Carve-Out Reserve, or such amounts are ultimately not used, such disallowed or unused fees, disbursements, costs, and expenses shall be released to the Debtor.

8.      *Termination of Use of Cash Collateral.*  Subject to paragraphs 8, 10, and 11, the Debtor's right to use the Cash Collateral pursuant to this Order shall automatically terminate (the date of any such termination, the "**Termination Date**") without further notice or court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (t) below (such events collectively referred to herein as the "**Termination Events**").  As used herein, "**Required Noteholders**" means, as of any date of determination, holders constituting a majority in aggregate principal amount of the Notes then outstanding, excluding the Notes held by the GE Parties.

(a)      The date that is 45 days after the entry of this Interim Order, unless a Final Order has been entered on or before such date;

(b)      failure by the Debtor to adhere to the Budget subject to the Permitted Variance or the Debtor's use of Cash Collateral in violation of Paragraph 6 of this Interim Order;

(c)      the Debtor (i) causes Ending Cash (as defined in the Budget) to fall below $8,000,000 for three consecutive business days or (ii) funds capital expenditures, major

maintenance and spare parts purchases in an amount that exceeds $5,000,000 in the aggregate since the Commencement Date;

(d)    failure of the Debtor to deliver to the Collateral Agent any of the documents or other information required to be delivered pursuant to the Interim Order or Final Order, as applicable when due or any such documents or other information shall contain a material misrepresentation;

(e)    failure of the Debtor to make any payment authorized pursuant to paragraph 14(d) of this Interim Order within five days following the end of the time period specified by that paragraph;

(f)    five business days after notice from the Collateral Agent or the Required Noteholders of the failure of the Debtor to comply with a provision of this Interim Order;

(g)    (i) the Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers shall be appointed in the Case, or (ii) the Debtor shall seek entry of an order accomplishing any of the foregoing;

(h)    other than pursuant to an order of this Court satisfactory to the Required Noteholders, the entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any Collateral that has a value in excess of $500,000 in the aggregate;

(i)    except as authorized by the Budget (without giving effect to the Permitted Variance) or an order of this Court satisfactory to the Required Noteholders, the

payment of any prepetition claim other than a payment or series of payments of prepetition claims in an aggregate amount no greater than $100,000;

(j)    the Debtor shall create, incur, or suffer to exist any postpetition liens or security interests on any Collateral other than:  (i) those granted pursuant to this Interim Order; (ii) the filing of a preliminary lien notice or similar notice by a carrier, mechanic, warehouseman, repairman, or similar party in advance of such party providing services to the Debtor, *provided that* any liens created in favor of any such party for services provided shall be subject to clause (iii) of this paragraph 8(j), and *provided further* that any act to enforce such liens or preliminary lien notices shall be subject to the applicable provisions of this Interim Order, including, without limitation, paragraph 8(g) hereof; (iii) carriers', mechanics', warehousemen's, repairmen's, or other similar liens arising in the ordinary course of business or by operation of law in an aggregate amount no greater than $1 million; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds, and other obligations of a like nature incurred in the ordinary course of business; and (vi) any other junior liens or security interests of the type and in the amounts that the Debtor is permitted to incur under the Existing Agreements;

(k)    an order shall be entered, or any proceeding shall be commenced by the Debtor seeking, or otherwise consenting to, granting another claim or lien *pari passu* with or senior to the Adequate Protection Liens  (as defined in paragraph 14(a) below) or 507(b) Claims (as defined in paragraph 14(c) below) granted to the Prepetition Secured Parties under this Interim Order;

(l)      an order of the Court shall be entered reversing, staying, vacating or otherwise amending, supplementing, or modifying this Interim Order without the written consent of the Required Noteholders;

(m)      one or more judgments or decrees required to be satisfied as an administrative expense claim shall be entered after the Commencement Date against the Debtor involving in the aggregate a liability that equals or exceeds $500,000 (not paid or to the extent not covered by a reputable and solvent insurance company) and such judgments and decrees either shall be final and non-appealable or shall not be vacated, discharged, or stayed or bonded pending appeal for any period of 30 days from entry thereof;

(n)      the Debtor shall support (by way of any motion or any other pleading filed with the Bankruptcy Court or any other writing to any party-in-interest duly authorized and executed by or on behalf of the Debtor or by any statement made during a Court hearing) any other person's opposition to any motion made in the Court by the Prepetition Secured Parties seeking confirmation of the amount of the Prepetition Secured Parties' claims or the validity or enforceability of the Liens in favor of the Prepetition Secured Parties;

(o)      any proceeding shall be commenced by  the Debtor seeking, or otherwise consenting to, (i) the invalidation, subordination, or other challenging of the Prepetition Liens, 507(b) Claims or Adequate Protection Liens or (ii) subject to entry of the Final Order, any relief under section 506(c) of the Bankruptcy Code with respect to any Collateral, including the Cash Collateral;

(p)      the Debtor shall file a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the

Prepetition Secured Parties, or there is a determination by a court with respect to a motion, pleading or proceeding brought by another party which results in such a material impairment;

(q)    (i) any provision of this Interim Order shall cease to be valid and binding for any reason or (ii) the Debtor shall seek any modification of this Interim Order that is adverse to the Prepetition Secured Parties without the prior written consent of the Collateral Agent and the Required Noteholders;

(r)    the Restructuring Support Agreement dated as of January 9, 2017 among the Debtor, certain Prepetition Secured Parties and certain other parties (the "**RSA**") terminates or ceases to be in full force and effect or any Termination Event occurs under the RSA;

(s)    the effective date of any confirmed chapter 11 plan of reorganization or liquidation in the Case; or

(t)    the expiration of the Budget, unless a Supplemental Budget has been agreed to by the Required Noteholders.

9.    *Remedies After a Termination Date.*  Subject to the provisions of this paragraph and paragraphs 8 and 11, the Debtor's authority to use Cash Collateral shall automatically terminate upon the occurrence of a Termination Event unless such Termination Event is waived in writing by the Required Noteholders, all without further order or relief from the Court.  The automatic stay under section 362 of the Bankruptcy Code is hereby vacated and modified to the extent necessary to permit the Collateral Agent and the Prepetition Secured Parties to exercise, upon five (5) business days' prior written notice (the "**Waiting Period**") to the Debtor (with a copy to counsel to the Debtor, counsel to the Committee, and the U.S. Trustee) given upon the occurrence or during the continuance of a Termination Event, all rights

and remedies against the Collateral, including the Cash Collateral, provided for in this Order, the Existing Agreements, and applicable law, unless the Court orders otherwise. During the Waiting Period, except as may be otherwise ordered by the Court, the Debtor shall not use any Cash Collateral to pay any expenses except those which are (i) necessary to preserve the Debtor's going concern value or (ii) necessary to contest in good faith whether a Termination Event has occurred and/or is continuing. The Debtor reserves the right to seek a hearing before this Court to contest whether a Termination Event has occurred and the right to seek Court approval of a new order approving the use of Cash Collateral over the objection of the Prepetition Secured Parties; *provided that* nothing in this Order shall impair the right of any party to object to such relief. The delay or failure of the Collateral Agent or the Prepetition Secured Parties to exercise rights and remedies under the Existing Agreements, or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Subject to entry of the Final Order, in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

10. *Application of Collateral Proceeds.* Subject to entry of the Final Order, after the expiration of the Waiting Period following the occurrence of a Termination Event, unless the Court orders otherwise, (a) the Debtor is hereby authorized and directed to remit all collections, remittances, and proceeds to the Collateral Agent, for the benefit of the Prepetition Secured Parties, and (b) the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the Prepetition Secured Parties to retain and apply all collections, remittances, and proceeds of the Collateral, subject to and in accordance with this Interim Order and the Existing Agreements, to the Prepetition Indebtedness in accordance with the provisions of the Existing Agreements (subject to the Carve-Out, as described above).

11.     *Limitation on Charging Expenses Against Collateral*.  Subject to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged or assessed against or recovered from the Prepetition Secured Parties or the Collateral pursuant to sections 105 and 506(c) of the Bankruptcy Code or any similar principle of law.  No action, inaction, or acquiescence by the Prepetition Secured Parties, including permitting the use of Cash Collateral to fund the Debtor's ongoing operations, shall be construed as consent to a charge against the Collateral pursuant to sections 105(a) or 506(c) of the Bankruptcy Code.

12.     *Limitations under Section 552(b) of the Bankruptcy Code*.  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to (i) proceeds, products, offspring, or profits of any of the Collateral, including the Cash Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Collateral.

13.     *Payments Free and Clear*.  Subject to paragraph 18, any and all payments or proceeds remitted to the Prepetition Secured Parties pursuant to the Existing Agreements or (except as provided in paragraph 19 of this Interim Order) pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability.

14.     *Adequate Protection for the Collateral Agent and the Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and

507 of the Bankruptcy Code, to adequate protection of their interests in the Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' prepetition security interests in all Collateral from and after the Commencement Date, if any, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtor (or other decline in value) of the Collateral, the Debtor's use of Cash Collateral and other Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Adequate Protection Claim**").  As adequate protection of the Adequate Protection Claim, the Prepetition Secured Parties are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)    Adequate Protection Liens.   Valid, enforceable, non-avoidable, perfected security interests in and Liens on (the "**Adequate Protection Liens**") all property of any kind or nature whatsoever, whether now owned or hereafter acquired or existing and wherever located, of each Debtor's estate (as created pursuant to section 541(a) of the Bankruptcy Code), whether real or personal, tangible or intangible, including all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, intellectual property including, without limitation, patents, trademarks, copyrights and licenses, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax, or other refunds, insurance proceeds, letters of credit, owned real estate, real property leaseholds, fixtures, vehicles, deposit accounts, commercial tort claims, securities accounts, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, leases, securities including, without limitation, all of the issued and outstanding capital stock of each subsidiary of the Debtor and other equity or ownership interests, including equity interests in non-wholly owned subsidiaries, money, and causes of action, Cash Collateral, and all cash and non-cash

proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above (all such property, the "**Adequate Protection Collateral**"), which Liens and security interests shall be senior to any and all other Liens and security interests, subject only to (i) the Carve-Out and (ii) any Liens permitted under the Existing Agreements or any valid, perfected and non-avoidable Liens that were in existence as of the Commencement Date and are senior to the Liens of the Collateral Agent and the Prepetition Secured Parties. Subject to and effective upon the entry of the Final Order, the Adequate Protection Collateral shall also include, without limitation, the proceeds of property recovered, unencumbered or otherwise, from any claims and causes of action of the Debtor arising under section 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code. For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Commencement Date and without the necessity of the execution by the Debtor, or the filing of, as applicable, any mortgages, security agreements, pledge agreements, financing statements, state or federal notice, recordings, or other agreements and without the necessity of taking possession or control of any Adequate Protection Collateral. Except as provided in paragraph 18 below, under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising.

(b)    Postpetition Interest.    To the extent permitted under the Bankruptcy Code and subject to paragraph 18 below, the Prepetition Secured Parties shall be entitled, as part of their allowed claims, to the accrual of interest at the default interest rate under the Indenture after the Commencement Date calculated in accordance with the terms of the Indenture and to the extent permitted under section 506(b) of the Bankruptcy Code.

(c)    Section 507(b) Claims.    Allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, as provided in section 507(b) of the Bankruptcy Code (the "**507(b) Claims**"), which claims shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 105, 326, 327, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 552 (subject to entry of a Final Order), 726, or 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in the Case or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, subject and subordinate only to the Carve-Out.  The 507(b) Claims shall be an allowed claim against the Debtor.  Other than the Carve-Out, no cost or expense of administration of the Case, including any cost or expense resulting from or arising after the conversion of any such Case to one under chapter 7 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the 507(b) Claims.

(d)    Fees and Expenses.    The Debtor is authorized and directed to pay all reasonable and documented fees and expenses of (i) the Collateral Agent (including fees and expenses incurred by counsel to the Collateral Agent), and the reasonable and documented fees and disbursements of O'Melveny & Myers LLP, Houlihan Lokey, Inc., Charles River Associates, Leidos Engineering, LLC, Young Conaway Stargatt & Taylor, LLP, Post & Schell, P.C. and any other consultant retained by the Ad Hoc Group in connection with the restructuring, and, (ii) so long as the RSA has not been terminated, Weil, Gotshal & Manges ("**Weil**"), as counsel to General Electric Company and its Affiliates (other than the Debtor) including GPFS Securities Inc., a holder of the Notes, (collectively, the "**GE Parties**"), and Reed Smith LLP ("**Reed Smith**"), as local Delaware counsel to the GE Parties, provided that the fees and

expenses of Weil and Reed Smith, collectively, after September 24, 2016 shall not exceed $1,250,000; and *provided further that* Weil, Gotshal & Manges LLP and Reed Smith LLP shall be compensated by Homer City only for services rendered in connection with Debtor's restructuring and/or the Chapter 11 Case, including Causes of Action asserted by any party, and Weil, Gotshal & Manges LLP and Reed Smith LLP shall not be compensated for assessing, responding to, or otherwise addressing any other claims threatened or asserted against GE.  None of the fees and expenses payable pursuant to this paragraph 14(d) shall be subject to  approval by this Court (but this Court shall resolve any dispute as to the reasonableness of such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  The Debtor shall pay the reasonable and documented fees and expenses provided for in this paragraph 14(d) within 15 days following receipt of invoices therefor by the Debtor, counsel for the Committee (if any), and the U.S. Trustee; *provided that* upon any objection to the reasonableness of such fees made within 10 days following receipt of such invoices, the Debtor shall pay all amounts that are not subject to such objection and shall pay the balance following the resolution of such objection or upon an order of this Court.  The invoices shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; *provided, however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (provided, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates).

(e)    <u>Reporting Obligations</u>.  The Debtor is authorized and directed to provide the following to counsel to the Ad Hoc Group, and to such other advisors as directed:

i. Presentations during normal business hours to the Ad Hoc Group and its advisors at times and places as the Ad Hoc Group may reasonably request in writing (including via electronic mail) with reasonable prior notice;

ii. Weekly (or less frequently as may be agreed to between the Debtor, the Collateral Agent, and the Ad Hoc Group) calls with the Collateral Agent, the Ad Hoc Group, and their respective advisors;

iii. A statement provided on each business day setting forth in reasonable detail the cash balance for  the Debtor's deposit accounts as of the end of the prior business day;

iv. On or before Friday of each calendar week, (x) an updated 13 week cash flow forecast, including supporting assumptions relating to merchant receipts, coal purchases, and operator vendor disbursements, and a list of any and all prepetition claims paid during the immediately preceding week (with a notation indicating which order authorized such payments) and the cumulative total of all prepetition claims paid (with a notation indicating which order authorized such payments), and (y) a report of Net Operating Cash Flow (as defined in the Budget) (the "**Variance Report**"), which shall include a reconciliation of Net Operating Cash Flow with the projected amounts in the Budget or applicable Supplemental Budget on a weekly, cumulative, and four-week trailing basis, *provided that* only the four-week trailing basis reconciliation shall be used for testing compliance with the Budget or the Supplemental Budget pursuant to paragraph 6 above; and

v. Beginning with the year-to-date period ended December 31, 2016, (x) a monthly and year-to-date income statement and balance sheet, with additional supporting information, as may be reasonably requested by the Collateral Agent or the Ad Hoc Group (y) a monthly and year-to-date summary of capital expenditures, and (z) a monthly report summarizing key operational metrics in a form reasonably acceptable to the Collateral Agent and the Ad Hoc Group. For the avoidance of doubt, each of (x), (y), and (z) shall be provided within twenty-five days following the end of the previous month. To the extent requested by the Required Noteholders, the Debtor shall hold a call with the Collateral Agent, the Ad Hoc Group, and their respective advisors to discuss the monthly reporting results.

15. *Reservation of Rights of the Prepetition Secured Parties*. The Prepetition Secured Parties consent to the adequate protection provided herein. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to, and does not constitute a waiver of, expressly or implicitly, (a) the right of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection (subject to the rights of the Debtor to object thereto), (b) the Prepetition Secured Parties' rights under the Existing Agreements, or (c) any of the rights of the Prepetition Secured Parties under the Bankruptcy Code or applicable non-bankruptcy law. Nothing contained in this Interim Order (including the authorization to use the Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to the Prepetition Secured Parties.

16. *Perfection of Adequate Protection Liens*.

(a) The Collateral Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar

instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Adequate Protection Liens granted to it hereunder. Whether or not the Collateral Agent shall, in its respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of the date of entry of this Interim Order, subject to any Challenge (as defined in paragraph 18 below) to the Prepetition Indebtedness or the Prepetition Liens. A certified copy of this Interim Order may, in the discretion of the Collateral Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(b)    The Debtor shall execute and deliver to the Collateral Agent all such agreements, financing statements, instruments, and other documents as the Collateral Agents may reasonably request to evidence, confirm, validate, or perfect the Adequate Protection Liens.

17.    *Preservation of Rights Granted Under the Order*.

(a)    It shall constitute a Termination Event if any claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Prepetition Secured Parties shall be granted or allowed while any portion of the Prepetition Indebtedness and the Adequate Protection Obligations remain outstanding.

(b)     The Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (i) the validity, priority, or enforceability of the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification, or vacatur or (ii) the validity, priority or enforceability of the Adequate Protection Liens to the extent of any diminution in value incurred prior to the effective date of such reversal, stay, modification or vacatur. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral or any Adequate Protection Obligations incurred by the Debtor to the Prepetition Secured Parties, as the case may be, prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Interim Order.

(d)     Except as expressly provided in this Interim Order or in the Existing Agreements, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order and the Existing Agreements shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting the Case to a case under chapter 7 of the Bankruptcy Code or dismissing the Case, or (ii) the entry of an order confirming a plan of reorganization in the Case. In any superseding chapter 7 case under the Bankruptcy Code, the Adequate Protection Liens, the Adequate Protection Obligations, the Section 507(b) Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the Prepetition

Secured Parties granted by this Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

18.    *Effect of Stipulations on Third Parties*.   The stipulations, admissions, waivers and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding on the Debtor's estate and all parties in interest, including, without limitation, the Committee, unless the Committee, or another party in interest (other than the Debtor) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (subject to the limitations set forth in paragraph 19 hereof, including, for the avoidance of doubt, the Investigation Budget), challenging the amount, validity, or enforceability of the Prepetition Indebtedness or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, claims, or causes of action on behalf of the Debtor's estate against the Prepetition Secured Parties relating to the Prepetition Indebtedness or the Prepetition Liens (such adversary proceeding or contested matter, a "**Challenge**"), on or before the earlier to occur of the 75th calendar day after the date of entry of this Interim Order, or [, subject to entry of the Final Order,] five (5) days before the hearing to consider confirmation of the Debtor's prepackaged chapter 11 plan (the "**Investigation Termination Date**").   If a chapter 7 or chapter 11 trustee is appointed, such trustee shall have the right to assert a Challenge prior to the Investigation Termination Date; *provided that* in the case of a chapter 7 trustee appointed prior to the Investigation Termination Date, such trustee shall have the longer of the Investigation Termination Date and 10 days after such chapter 7 trustee is appointed to assert a Challenge, unless further extended by the Court; *provided further* that chapter 7 trustee shall be permitted to prosecute the Challenge, if any, commenced by the Committee prior to the Case converting to chapter 7.   If no such Challenge is timely commenced as of the Investigation Termination Date,

without further order of the Court, (i) the Prepetition Indebtedness shall constitute allowed, secured prepetition claims for all purposes in the Case and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceeding if the Case is converted to a case under chapter 7 of the Bankruptcy Code or in any proceedings related to any of the foregoing (a "**Successor Case**"); (ii) the Prepetition Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination or avoidance for all purposes in the Case and any Successor Case; (iii) the Prepetition Indebtedness, the Prepetition Liens, and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claim, cause of action, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of the Debtor; and (iv) the Debtor and its estate shall be deemed to have relinquished, released, and waived any and all claims or causes of action against the Prepetition Secured Parties with respect to the Existing Agreements or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in paragraph 4 of this Interim Order shall be binding on the Debtor's estate, the Committee, and all parties in interest. If a Challenge is timely commenced, the stipulations contained in paragraph 4 of this Interim Order shall be binding on the Debtor's estate and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge; *provided that* if and to the extent a Challenge is withdrawn, denied, or overruled, the stipulations specifically challenged in such Challenge also shall be binding on the Debtor's estate and all parties in interest. In the event the Committee or other party in interest initiates an investigation of potential claims against any party other than the Prepetition Secured Parties, the Prepetition Secured Parties shall have the right to fully participate in such investigation.

19.     *Limitation on Use of Cash Collateral and Collateral.*  The Debtor shall use the Collateral, including the Cash Collateral, solely as provided in this Interim Order. Notwithstanding anything herein or in any other order of this Court to the contrary, none of the Collateral, including the Cash Collateral, may be used to (a) to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties; (b) contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under the Existing Agreements or the Liens or claims granted under this Interim Order or the Existing Agreements; (c) assert any Claims and Defenses or any other causes of action against the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; (d) prevent, hinder, or otherwise delay the Prepetition Secured Parties' assertion, enforcement, or realization on the Collateral in accordance with the Existing Agreements or this Interim Order (e) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder or under the Existing Agreements, in the case of each of the foregoing clauses (a) through (e), without such party's prior written consent; or (f) pay any amount on account of any claims arising prior to the Commencement Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the Budget or this Interim Order.  Notwithstanding the foregoing, the Committee and its advisors may investigate the Liens granted pursuant to the Existing Agreements prior to the Investigation Termination Date and any causes of action in connection therewith at an aggregate expense for such investigation not to exceed $20,000 (the "**Investigation Budget**").

20.     *Proof of Claim.*  Neither the Collateral Agent nor the Senior Noteholders shall be required to file a proof of claim with respect to any claims arising under the Indenture,

and the stipulations and findings set forth in this Interim Order shall constitute a timely proof of claim in respect of such claims.

21.     *Credit Bidding*. Subject to and effective upon entry of the Final Order, the Collateral Agent or Senior Noteholders shall have the right to credit bid, up to the full amount of their secured claim in any sale of the Collateral as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

22.     *Order Governs*. In the event of any inconsistency between the provisions of this Interim Order, on the one hand, and the Motion or the Existing Agreements, on the other, the provisions of this Interim Order shall govern.

23.     *Binding Effect; Successors and Assigns*. The provisions of this Interim Order, including all findings herein, shall be binding upon and inure to the benefit of all parties-in-interest in the Case, including the Prepetition Secured Parties, to the extent as set forth herein, and the Debtor, the Committee appointed in the Case, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor); *provided that* the Prepetition Secured Parties shall have no obligation to permit the use of the Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.

24.     *Limitation of Liability*. Subject to and effective upon entry of the Final Order, in permitting the use of Cash Collateral or in exercising any rights or remedies as and

when permitted pursuant to the Final Order or the Existing Agreements, the Prepetition Secured Parties shall not solely by reason thereof be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).  Furthermore, subject to and effective upon entry of the Final Order, nothing in this Order or in the Existing Agreements shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtor.

25.    *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Interim Order.

26.    *Final Hearing.*  The Final Hearing is scheduled for **February 3, 2017 at 10:30 a.m (Eastern Standard Time),** before this Court.

27.    *Final Hearing Notice.*  The Debtor shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon:  (i) the proposed attorneys for the Debtor, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq., Russell C.

Silberglied and Paul N. Heath, Esq.), and (ii) the Notice Parties, and shall be filed with the Clerk

of the Court, in each case so as to be received by 4:00 p.m. (Eastern Standard Time) no later than

seven days prior to the Final Hearing.

Dated: January 12, 2017
       Wilmington, Delaware

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE